York v. The Commonwealth.

---

CASE 60—INDICTMENT—NOVEMBER 1, 1884.

# York v. The Commonwealth.

APPEAL FROM CUMBERLAND CIRCUIT COURT.

1. Even if it be true that the jury were improperly selected, or if the attorney for the Commonwealth had been previously retained to prosecute appellant, he made no objection nor exception until the motion for a new trial was made. The court can not consider either question.

York v. The Commonwealth.

2. The fact that appellant had been deputized by the sheriff of Clinton county to arrest Poore, did not authorize him to make the arrest in another county. The sheriff himself could not legally do it.
3. The copy of the indictment and bench-warrant against Poore, together with the statements to show that appellant was acting under the warrant, were properly rejected as evidence.
4. The testimony offered by appellant, as to the bad character of Poore and what the sheriff of Clinton had said to appellant when he authorized the arrest, was incompetent.
5. There was no evidence showing the existence of facts, constituting involuntary manslaughter, and an instruction in that regard would have been erroneous.

J. H. C. SANDIDGE and G. A. BRENT for appellant.

1. The jury was improperly selected.
2. R. N. Spencer, who prosecuted under the appointment of the court, had been previously employed to prosecute appellant, and did prosecute him before the court of inquiry.
3. The court erred in refusing to admit the indictment and bench-warrant against Poore, and in refusing to permit testimony as to his bad character.
4. The court erred in giving instruction number two, because there is no evidence upon which to base it.
5. Instruction number three, in regard to the reckless handling of his gun, is error. It tells the jury that if the shooting was accidental, yet if done by defendant in the recklessly careless handling of a deadly weapon, they should find him guilty of manslaughter. (Connor v. The Commonwealth, 13 Bush, 718.)
6. Several others of the instructions, palpably number six, are misleading.
7. The court failed to instruct as to all the law applicable to the case.
8. Erred also in failing to instruct as to involuntary manslaughter. (7 Bush, 327.)

P. W. HARDIN, Attorney General, for appellee.

1. In no event could the sheriff of Clinton county authorize a citizen of that county to go into Cumberland county and execute any writ directed to him as sheriff of Clinton county.
2. Appellant was a trespasser from the beginning.
3. The killing was the result of a reckless and culpably careless handling of his gun.
4. The instructions substantially embody the law of the case.

JUDGE HOLT delivered the opinion of the court.

The appellant, A. A. York, having been sentenced to five years' confinement in the penitentiary upon a con-

viction. under an indictment charging him with the murder of Richard Kilpatrick, seeks a reversal of the judgment by this appeal.

If it be true that the trial jury were not properly selected by their names not being drawn from the regular panel ; or if the Commonwealth's attorney *pro tem.*, who prosecuted the case, had been previously retained to prosecute the appellant, yet he can not rely upon these facts for a reversal in this court, because, even admitting that they would constitute reversible errors if properly presented, yet the record discloses the fact that he made no complaint upon this score until the motion for a new trial was made, and that he then, for the first time, excepted to such action ; and a decision of the lower court upon a motion for a new trial is not subject to exception. (Criminal Code, section 281.)

The consideration of the other alleged errors requires a brief statement of the facts attending the killing.

The sheriff of Clinton county, having a bench-warrant for the arrest of one James Poore, that had issued upon an indictment for a misdemeanor pending in the circuit court of said county, and having been unable to execute it, he, by the proper indorsement. upon it, authorized the appellant to arrest said Poore..

Upon the night of the killing, the defendant, with one Spearman, went to the house of the father of the deceased, with whom the son lived, and which was in *Cumberland* and not in *Clinton* county, for the purpose of arresting Poore, the appellant having learned that he would be there that night.

The testimony tends strongly to show that the father had notified the appellant that Poore would be there

that night, and had requested him to come and arrest him, as he did not desire his son to be in his company.

Upon their arrival the father informed them that his son and Poore were not then there, but to secrete themselves near by and that they would detect their coming by the barking of the dog; and then to wait until they had time to retire, and to then enter the house, the door of which would be left open for that purpose.

Accordingly they waited until some time in the night, when they entered the house, each being armed with a shotgun, and the appellant having in the yard, and before entering, cocked both barrels of his gun. His companion told him "there was no use in that and to uncock it," but he persisted in doing so.

Spearman went in first, holding his gun so that the muzzle of it pointed down at the floor; while the appellant followed with his gun cocked and presented at the bed in which were lying both Poore and young Kilpatrick.

Spearman went to the bed, laid his hand on Poore, and told him to surrender; and he replied that he would do so.

Just at this time and while the appellant was standing in the middle of the room with his cocked gun leveled at Kilpatrick, the latter raised upon his knees in the bed and said: "Don't shoot." Spearman raised the same cry, and immediately the gun fired and killed Kilpatrick.

The testimony does not show whether the appellant pulled the trigger or whether the gun was discharged by accident; and it is conflicting as to whether the appellant said, immediately after the firing, that it was

.an accident, or, "You see what I can do with a damn man."

It is probable that the jury did not believe that he made the latter statement; also that he did not say on the road that night, and before the killing, as testified by one Wolfe, that "if Poore resisted he would kill him, and if Dick Kilpatrick made an attempt he would shoot him," else they would hardly have found a ver- -dict of manslaughter.

The fact that the appellant had been deputized by the sheriff of Clinton county to arrest Poore, did not au- thorize him to do so in another county.

While a sheriff may, by writing, empower any person to execute a process, yet the action of the sheriff him- self under it is limited to his own county, and the power conferred can not exceed that of the principal. It is true that a criminal warrant is not directed to the sheriff of any particular county, as in the case of a civil summons; but it is not done in order that any sheriff may receive and execute it within his county. (General Statutes, chapter 100, sections 7–10.)

Hence it follows that the copy of the indictment and bench-warrant against Poore, with the indorsements thereon, as well as the testimony tending to show that the appellant was acting under said warrant, were not competent testimony.

But even if the law were otherwise, yet the defendant in fact got the benefit of it, as he was allowed to show, by Spearman, that he (appellant) had, at the time of the killing, the bench-warrant, and had been deputized by the sheriff of Clinton county to execute it.

The interruption of the counsel by the court during

the argument, and the statement then made by the trial judge that he could not permit counsel to argue testimony that had been excluded from the jury, seems, from the record, to have related to what counsel was then saying as to Poore's character; but even if it referred to the authority under which the appellant claimed to have acted, the appellant can not complain of it, as the testimony was incompetent and the documentary evidence relating to it had been excluded from the consideration of the jury.

The testimony offered by the defendant relative to the alleged bad and dangerous character of Poore, and what the sheriff of Clinton county had told appellant when he authorized him to make the arrest, was properly rejected for several reasons, some of which will be inferred from what has been said already; moreover, the testimony as to character, as shown by the avowal made at the time, did not relate to *general* bad character, but to bad character only; and if it had otherwise been competent, it was not brought within the well settled rules of evidence regulating its admission.

It is evident that the verdict of the jury was based upon the reckless carelessness of the appellant in the use of a known deadly weapon. He had entered the house with it cocked; he recklessly and with a seeming utter indifference to the safety of life, presented it, when cocked, at the deceased, being at the same time warned not to shoot, and hence the rejection of the testimony tending to show that the hammer of the gun would sometimes fall without the trigger being pulled, was not prejudicial to the defendant.

If the jury had believed from the testimony that

the firing was deliberate and intentional, and not the result of a reckless use of the weapon, they could not consistently have convicted the appellant of manslaughter only. Moreover, the gun with which the killing was done was not identified as the one as to which this testimony was offered.

It is unnecessary to review all of the instructions that were given or refused.

The jury were properly instructed as to the law of murder; and even if the instruction as to manslaughter was somewhat abstract, yet it certainly was not prejudicial to the appellant.

The third instruction given to the jury, and which is the one mainly complained of by the appellant, reads as follows, to wit:

"Although the jury may not believe, from the evidence, beyond a reasonable doubt, that defendant has been proven guilty of murder, as set out in instruction number one, nor of shooting in sudden heat of passion or a sudden affray, as set out in instruction number two, yet if they believe, from the evidence, beyond a reasonable doubt, that the shooting and killing of Kilpatrick was accidental and was done by defendant in the recklessly careless use or handling of a loaded deadly gun, then in his hands, they should find him guilty of manslaughter and fix his punishment at confinement in the penitentiary for not less than two nor more than twenty-one years."

An instruction, in substance similar to this one, was given in the case of Chrystal v. The Commonwealth, 9 Bush, 670, and was approved by this court, and the same rule has been announced in other cases. (Sparks

v. Commonwealth, 3 Bush, 111 ; Wyatt v. Same, MS. opinion, December 11, 1880.)

In this case the appellant had the benefit of the converse of the above instruction, because the jury were told in the sixth one, given by the court, that if the gun was discharged accidentally and not by reason of the careless and reckless use of it by the defendant, considering the place and the circumstances then surrounding him, that they should acquit him.

The jury could not have inferred, from the last-named instruction, that, to enable them to find the counter of it, they had only to believe from the evidence that the weapon had been recklessly used by the appellant, because, in the seventh instruction, they were told that they must so believe beyond a reasonable doubt or they could not convict.

Instruction "D," asked by the defendant, was properly refused. So much of it as was proper had already been given by the court, and it improperly singles out and gives undue prominence to particular circumstances, which appellant claims were proven in the case. It is urged, however, that the whole law of the case was not given, and that the jury should have been instructed as to involuntary manslaughter, for which our statute prescribes no penalty, and which is therefore governed by the common law, and is by it punishable with fine and imprisonment.

There was no evidence in this case, however, showing the existence of facts constituting involuntary manslaughter.

It has been said that it is the killing of another by one engaged in some unlawful act without an intention

to kill such person; but if this be altogether correct, then it follows that if A unlawfully shoots at B, but, missing him, kills C, that it is only involuntary manslaughter in A, punishable with fine and imprisonment.

It seems to us that a better definition is given in Hale's Pleas of the Crown, when he says that "involuntary homicide is the death or hurt of the person of a man against or beside the will of him that kills him."

One must be presumed to intend the consequences of an act, reckless in its character of human life, and committed under circumstances calculated to endanger it. If death results it can not be properly said either that it was an involuntary homicide or a killing *per infortunium.*

The familiar illustration given in the text-books is.: If one, knowing that people are passing along a street, throw a stone from a house-top, whereby death ensues, it will be manslaughter because of the recklessness of the act, although he did not intend to hurt any one.

In 1 Russell on Crimes, book 3, chapter 2, section 4, page 636, it is said: "It has been shown that where, from an action unlawful in itself done deliberately and with mischievous intention, death ensues, though against or beside the original intention of the party, it will be murder; and it may be here observed that if such deliberation and mischievous intention does not appear (which is matter of fact and to be collected from circumstances), and the fact was done *heedlessly and incautiously,* it will be manslaughter. * * *There are many acts so heedless and incautious as necessarily to be deemed unlawful and wanton, though there may not*

*be any express intent to do mischief, and the party committing them, and causing death by such conduct, will be guilty of manslaughter.*"

Mr. Wharton says: "Whatever may be the difference as to the degrees of homicide, a party whose negligence causes the death of another is in like manner responsible, whether the business in which he was engaged was legal or illegal. If the business was of such a character as to be felonious, the offense, it is clear, is murder. * * But even where the business is perfectly legal, negligence in the discharge of it, when producing homicide, is manslaughter."

It was properly said in the case of Chrystal v. The Commonwealth, *supra*, that "to this general rule there may be exceptions, as where an act, careless in itself, is committed with fatal results under circumstances, or at a place from which it might be reasonably inferred, that no injury could happen from the carelessness of the party acting."

The case now under consideration does not come within the exception ; and it may now be regarded as well settled in this State by numerous decisions of this court that when one does an act in such a reckless, careless manner that it is calculated to endanger human life, and death ensues, he is guilty of manslaughter, although the death of the person killed may not have been intended.

Judgment affirmed.