Smith v. Commonwealth.

' CASE 55—INDICTMENT—SEPTEMBER 24.

# Smith v. Commonwealth.

### APPEAL FROM KNOX CIRCUIT COURT.

1. MANSLAUGHTER—KILLING THROUGH CARELESSNESS.—One who causes death by an act so heedless and incautious as necessarily to be deemed wanton and unlawful, though there may not be any express intent to do mischief, is guilty of manslaughter. And in such case it does not, as a general rule, make any difference whether the party whose negligent act causes death was or not at the time engaged in the discharge of legal business. But there are exceptions to that rule, and it is to be applied in full force, as modified, or not at all, according to the circumstances of each case.

2. SAME.—Where one of two persons remote from other people accidentally kills the other during the process of voluntarily exchanging loaded weapons, or by accidental discharge of his own weapon while they are engaged in shooting at a mark or in the clouds, it does not necessarily follow that such act is of such reckless and wanton nature as to be felonious or criminal. Whether such a killing is manslaughter depends upon all the circumstances.

3. SAME.—As it appeared upon the trial of defendant for murder that he and the deceased at the time of the killing were engaged in shooting at a mark or firing their pistols in the air, and the testimony tended to show that the killing was accidental, it was error in instructing as to manslaughter by killing through carelessness or negligence to call attention to the fact that the defendant was at the time acting as guard of the deceased, who was under arrest. The guilt of the defendant is to be determined without reference to the relation of guard and prisoner. If he was derelict in his duty as guard he must answer therefor in some other way.

4. INVOLUNTARY MANSLAUGHTER.—The court should have given an instruction as to involuntary manslaughter, punishment for which is fine and imprisonment.

J. SMITH HAYS FOR APPELLANT.

Brief not in record.

W. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

The record does not show what the grounds for new trial were. The question therefore suggests itself whether appellant without a motion for new trial can prosecute an appeal to this court. This question has been considered by this court in the following cases: Harper v. Harper,

10 Bush, 447; McAllister v. Ins. Co., 78 Ky., 531; Helm v. Coffey, 80 Ky., 176; Henderson v. Dupree, 82 Ky., 678.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The deceased, James Bailey, had on the same day of his own death killed a man named Minks, and was arrested and taken to Barboursville. But his examining trial being put off, he was given the right to employ a guard, and by the accommodating constable permitted to select the person to act as such, who was appellant Smith.

The prisoner and his guard, each being armed, the former with a large and the latter a small pistol and shotgun, started from town without presence of the constable, to go to the residence of the prisoner's father, about twelve miles distant, to return on day of the trial, or, for all the officers apparently cared, never.

On the way they met one Green Hammond, who permitted the prisoner to ride with him on his mule, the one he started from town on having been taken from him by the owner. When they, the prisoner, guard and Hammond, got within a short distance of the draw-bars opening into his father's farm, the first mentioned proposed to fire his pistol at a tree, but was dissuaded, because the mules might become frightened, though it was agreed he might shoot when they got to the draw-bars. Accordingly, upon arrival there, all dismounted, and the prisoner, now deceased, commenced shooting with the large pistol, not at a mark, as was suggested to him, but, as he said was preferable, "at the clouds," and his guard, now appellant, followed his example. After two shots were fired by each of them, the deceased called for the small pistol, at the same time handing appellant the large one, muzzle foremost, back over his shoulder—whether the right or

left is not stated—which he took, handing the small one, breech foremost, to the deceased. The latter pistol was immediately fired three or four times, but by whom Hammond was not able to state, because he says his attention was at that time given to his mule. When he turned his face toward the other two he saw the deceased sinking back as though going to sit down, and throwing his hands behind him said, "Bill, I believe I am shot," and the small pistol fell directly behind him. The pistol ball, which caused death in about five minutes, entered his back below the shoulder blade and to right of the spine, ranging downward and toward the left side.

The position of appellant at the time of the shooting was to the left of where the deceased stood and upon higher ground, about two feet.

If Hammond, the only other eye-witness besides appellant, testified truthfully, it does not seem to us at all probable the latter shot the deceased; for it was hardly possible for him, occupying the position he as well as Hammond testifies he did, to have shot the deceased in the place he was struck and given to the bullet the direction it took; nor is it natural or reasonable, if he had done so, that the deceased would have with his last breath used words indicating he had himself done it, and that appellant was not to blame. Besides, the deceased having handed the large pistol to appellant, asking at the same time for the small one, which Hammond states he saw the latter in the act of giving to him, it is scarcely credible that as many as three shots were afterward fired with it by appellant instead of the deceased.

But there is testimony of statements subsequently made by appellant tending to show he, and not deceased, fired

Smith v. Commonwealth.

the shot that caused the death, though there is none from which it can be reasonably inferred he intentionally shot or killed deceased.

The court gave an instruction applicable to a case of murder, for which appellant was indicted, the usual instruction as to manslaughter and also the following: " If the jury shall believe from the evidence to the exclusion of a reasonable doubt that the deceased was under arrest and in charge of the defendant as a guard, then it was his duty not only to prevent an escape by deceased, but also, as far as he reasonably could, to protect deceased from violence ; and if, while such relation of prisoner and guard existed, they shall believe from the evidence to the exclusion of a reasonable doubt that the defendant either carelessly or negligently in discharging firearms shot and killed said Bailey, they will find him guilty of manslaughter and fix his punishment at confinement in the penitentiary not less than one nor more than twenty-one years, even though they may believe that defendant did not intend to shoot deceased."

The verdict of the jury reads thus : " We of the jury agree and find the defendant Smith guilty of killing by the reckless handling of firearms, and fix his punishment two years in the State prison."

The jury seems not to have returned a verdict in terms of manslaughter, but undertook to describe, in their own language, the offense of which they concluded appellant was guilty, but to affix punishment provided by statute for the technical offense of manslaughter.

Undoubtedly an act may be so heedless and incautious as to necessarily be deemed wanton and unlawful, though there may not be any express intent to do mischief; and

the party who thereby causes death will be guilty of manslaughter. Sparks v. Commonwealth, 3 Bush, 111. And in such case it does not, as a general rule, make any difference whether the party whose negligent act causes death was or not at the time engaged in discharge of legal business. Chrystal v. Commonwealth, 9 Bush, 669. But as said in that case, there are exceptions to that rule, and it is to be applied in full force, as modified, or not at all, according to circumstances of each case. For death may result from the act of a party, under such circumstances as to strike one at first blush so reckless and wanton as to be felonious, though apparently not intended by the perpetrator; as where stones or heavy timbers are thrown from the top of a house down on a street where persons are constantly passing. On the other hand, it does not necessarily follow where one of two persons remote from other people, accidently kills another during the process of voluntarily exchanging loaded weapons, or by accidental discharge of his own weapon while they are both engaged in shooting at a mark or in the clouds, that such act is of such reckless and wanton nature as to be felonious or criminal. Nor does it seem to us probable the verdict of the jury would have been returned but for the instruction quoted. Whether appellant was guilty or not of manslaughter must depend upon the time, place and actual circumstances under which it occurred, without regard to the relation of guard and prisoner, to which the court, we think, erroneously called attention of the jury. If appellant was derelict in his duty as guard, he has to answer directly therefor otherwise than under an indictment for murder, and his failure to do duty as such should not be considered in determining whether, while he and

deceased were willingly, and not, as we think, unlawfully, engaged in firing their pistols, he killed him in such negligent and careless manner as to be wanton and criminal. It seems to us the question of appellant's criminality should be determined without regard or reference to the relation of guard and prisoner, and the instruction mentioned is erroneous and was well calculated to mislead the jury to appellant's prejudice. We think there ought to have been given an instruction on the subject of involuntary manslaughter, punishment for which is fine and imprisonment.

Judgment reversed for new trial.