CASE 87—JAMES SPRIGGS WAS CONVICTED OF THE OFFENSE OF MAN-SLAUGHTER AND HE APPEALS.—JUNE 13.

# Spriggs v. Commonwealth.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS.  AFFIRMED.

HOMICIDE—DEGREE OF THE OFFENSE—VERDICT FINDING DEFENDANT GUILTY OF MANSLAUGHTER—FAILURE TO MAKE MOTION FOR NEW TRIAL.

Held:   1. As the common law offense of manslaughter has been subdivided by carving out of it the statutory crime of voluntary manslaughter, leaving involuntary manslaughter to be dealt with as at common law, the term "manslaughter" is now a generic term, covering two degrees of homicide; and therefore a verdict, under an indictment for murder, finding defendant guilty of manslaughter, finds him guilty of two offenses included in the charge of murder, and so can not be construed as an acquittal of all offenses included therein.

2. An error in instructions, though it would have been sufficient to entitle defendant to a new trial if he had made a motion therefor, was not sufficient to entitle him to a discharge from custody as acquit.

HENDRICK & MILLER AND J. G. HUSBANDS, FOR APPELLANT.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. Prisoner indicted for murder may be convicted of murder, voluntary manslaughter, or involuntary manslaughter, and these three different offenses (or degrees of one offense) must

Spriggs v. Commonwealth.

be recognized by the court, and the correct distinctive name given to each in the instructions; and the verdict must name the offense of which the accused is found guilty. The general or generic term "manslaughter" does not describe any single degree of the offense charged in the indictment, and is not the name of any one single or distinct offense known to our law. Kentucky Statutes, sec. 1150; Kentucky Crim. Code, sec. 257, subsecs. 2, 263; Conner v. Com., 13 Bush, 714; Buckner v. Com., 14 Bush, 601; Mitchell v. Com., 78 Ky., 219; Trimble v. Com., 78 Ky., 176; Bush v. Com., 78 Ky., 268; Smith v. Com., 93 Ky., 318; Com. v. Mathews, 89 Ky., 287; Wood v. Com., 9 Ky. Law Rep., 872.

2. Inasmuch as the jury failed to find the defendant guilty of any degree of the offense named in the indictment, but found him guilty of an offense not known to the law, the verdict is equivalent to an acquittal of the offense charged. Conner v. Com., 13 Bush, 714; State v. Brannon, 55 Mo., 63; 17 Am. Rep., 643.

3. Voluntary manslaughter can not be committed by an involuntary act. Involuntary manslaughter is "the killing of another person in doing some unlawful act not amending to a felony, nor likely to endanger life, but without any intention to kill," and the facts of the killing in this case as found by the jury, do not even measure up to this standard of criminality, because defendant was not engaged in doing an unlawful act, and the firing of the pistol was purely accidental. So defendant could be guilty of no higher crime than involuntary manslaughter. Ross v. Com., 21 Ky. Law Rep., 1344; Conner v. Com., 13 Bush, 714; Wood v. Com., 9 Ky. Law Rep., 872; Minton v. Com., 79 Ky., 461; Buckner v. Com., 14 Bush, 601; Blackstone, 4th Book, 177 to 193; Greenleaf on Evidence, vol. 3, secs. 138, 119, 121, 128; Wharton's American Crim. Law, 423-424; Trimble v. Com., 78 Ky., 176.

4. The court has not power, authority nor jurisdiction to sentence a prisoner to a term in the penitentiary for any offense that is not punishable by such confinement under the law, and such judgment is null and void. Com. v. Adams, 92 Ky., 134; In re Bonner, 151 U. S., 243; Ex parte Lange, 18 Wallace, 176.

5. Prisoner can not be put into jeopardy the second time, and must therefore be discharged. Constitution of Kentucky, sec. 11; And of the United States, sec. 1, art. 14; M. & B. Stat., vol. 2, pp. 1265-1294; 3 Bush, 111; 82 Ky., 360; Cooley Con. Lim., side page, 330; Williams v. Com., 78 Ky., 93; O'Brian v. Com., 9 Bush, 333.

CLIFTON J. PRATT, ATTORNEY GENERAL, FOR COMMONWEALTH.

The appellant was indicted for willful murder and convicted of the offense of voluntary manslaughter. No motion for a new trial was made in the court below, and appellant seeks a reversal upon the sole ground that error was committed by the trial court in overruling his motion to arrest the judgment.

The testimony of the Commonwealth shows that accused was strongly attached to Mamie Rogers and was jealous of the attentions of other men. He had made repeated threats to kill her if she associated with one Furtrell or received his attentions. On the evening of the shooting, appellant, Mamie Rogers and her sister were seated on a bench on the front porch of Eliza Rogers' house talking, apparently on good terms, when Mamie walked out of the gate near the end of the porch to visit a hall where the colored people were having a dance. The accused then showed his jealous nature by using an oath and telling her she was going to see Bert Furtrell. She first denied and then in a laughing way admitted such was her purpose. The accused arose instantly, drew a pistol from his bosom and fired one shot, his victim screamed and fell, and accused emphasized his guilt by fleeing down the street.

These facts establish a willful, deliberate and intentional killing.

He claims that the pistol belonged to Mamie, that he got it from her trunk to prevent Dick Scott from getting it, that he had it in his hand swinging it on his finger which passed through the guard over the trigger, that after the girls went to the gate the pistol slipped, and being about to fall he caught it with a grip when it accidentally fired.

We submit that if the evidence was such as to authorize the jury to find appellant guilty of murder, and they found him guilty of a lower degree of that offense, he is in no condition to complain and can not be heard.

It has been repeatedly held by this court that a killing by the recklessly careless use or handling of a loaded pistol, renders the party guilty of voluntary manslaughter. The instructions of the court omit the word "voluntary," but the elements of the offense and the punishment to be fixed showed that voluntary manslaughter was intended and the jury were not misled.

The evidence of the defendant did not authorize an instruction for involuntary manslaughter.

### AUTHORITIES CITED.

3 Bush, 111; 9 Bush, 670; Wyatt v. Com., Manuscript Opinion, secs. 11, 1880; 82 Ky., 360; 93 Ky., 318; 15 Ky. Law Rep., 215.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

Appellant was indicted for the murder of Mamie Rogers, found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for 21 years at hard labor. The testimony in the case requires little consideration. The witnesses for the Commonwealth show an entirely different case from that shown by the witnesses for the defense. The Commonwealth's case is that the accused was in love with the girl who was shot, and was very jealous of the intentions of another young negro, named Futrell; that he had threatened to kill the girl if she went with the latter; that they were sitting together, with her sister, on the porch of her brother's house, on perfectly friendly terms; that the two women started to go across the street to a hall where a ball was being given; that he asked Mamie, with an oath, if she was going to see Futrell; that she jokingly said she was, whereupon he drew from his breast a pistol, and deliberately aimed at and shot Mamie as she stood just outside the gate. The case of the accused is that he and the girl were on the best of terms; that he was not jealous; that he had taken the pistol from her trunk to prevent one Scott, a friend of her sister's from getting possession of it, as Scott was drunk and trying to obtain it for the purpose of raising a disturbance; that he had the pistol swinging on his finger by the trigger guard,—the pistol being of such a make that pulling the trigger would not explode it, unless at the same time the butt, which contained a spring, was gripped by the hand; that as the two girls started to go, and were standing within two or three feet of him, the pistol slipped, and was about to fall, when he, automatically and unconsciously, to prevent its falling, gripped it by the butt, and it was accidentally discharged, and killed the girl. It may be mentioned that the testimony of the

physicians as to the course of the ball to some extent corroborates the accused's statement of the relative positions of the parties.

Counsel for the accused deliberately and purposely refrained from making a motion for a new trial, but did move the court "to render a judgment, upon the verdict returned by the jury, discharging him from custody, and as acquitted of the crime charged against him in the indictment." There is no question here of oversight or omission by counsel. The case was practiced throughout in the most approved style, by able counsel, and the action taken was for the definite purpose of presenting for decision this question of pure law. Was the judgment in this case void, and is the power of the courts over this prosecution ended? The whole contention for appellant is based upon this proposition: The jury found the defendant guilty of manslaughter. Manslaughter, at common law, was a recognized crime. By the Virginia and Kentucky Statutes it has been divided into the statutory offense of voluntary manslaughter, punishable by confinement in the penitentiary not less than 2 nor more than 21 years (Kentucky Statutes, section 1150), and involuntary manslaughter, which remains a common-law offense, for which no punishment has been prescribed by statute, and which is therefore punishable only by fine and imprisonment in the county jail. There no longer remains any such offense as manslaughter, under the laws of this State. There is no statute defining or punishing such an offense, and what is left of the common-law offense known by that name is involuntary manslaughter. Under an indictment for murder, a conviction may be had of murder, voluntary manslaughter, or involuntary manslaughter. Therefore, when the jury found the defendant guilty of manslaughter, they found him guilty of an offense which did .

not exist, and by their finding acquitted him of the offenses included in the charge in the indictment, viz., murder, voluntary manslaughter and involuntary manslaughter. It would follow, if this contention is sustained, that the court erred in overruling the motion for discharge, and that we must reverse that order. The authority chiefly relied on is Conner v. Com., 13 Bush., 714, where, upon an indictment for murder, conviction was had, under the instructions of the court, for the offense of killing by wilfully striking, etc., —a new offense created by statute, being the offense now described in section 1151, Kentucky Statutes. It was held that, under sections 262 and 263 of the Criminal Code of Practice, this statutory offense was not a degree of the offense of homicide; that, therefore, under indictment for murder, the defendant could not be found guilty of this offense; and that a conviction of the statutory offense under an indictment for murder was equivalent to an 'acquittal of the crime of murder and all subsidiary crimes included in it, and the court erred in not discharging the prisoner on his motion. In the elaborate opinion by Judge Cofer, the case of Terrell v. Com., 13 Bush., 253, is overruled upon this point, and the contention of appellant in this case as to the degree of murder under the common law as modified by the Kentucky Statutes is fully sustained. In Buckner v. Com., 14 Bush, 601, in an opinion by Judge Hines, the degrees of homicide, viz., murder, voluntary manslaughter and involuntary manslaughter, were recognized, and the case reversed for failure to give an instruction upon involuntary manslaughter, which omission was held to be prejudicial. So, in Mitchell v. Com., 78 Ky., 219, the judgment was affirmed, in an opinion by Judge Hines, though an instruction as to involuntary manslaughter had not been given; the court holding that as there had already been an

instruction "as to the law of voluntary manslaughter,—intentional killing without malice—and as the jury found the killing to have been done with malice, the instruction as to involuntary manslaughter could not have been of any service to appellant." In Trimble v. Com., 78 Ky., 176, the definition of "involuntary manslaughter" given in Conner v. Com. was approved; and it was held that, where the facts justified it, an instruction as to the law of involuntary manslaughter was proper and necessary. The court in that case distinctly held that involuntary manslaughter was punishable by fine or imprisonment in jail—one or both—at the discretion of the jury; referring to manuscript opinion in Brown v. Com., November 15, 1879. In Bush v. Com., 78 Ky., 268, the judgment was reversed for failure to give an instruction upon involuntary manslaughter. In Smith v. Com., 93 Ky., 318. (14 R., 260) 20 S. W., 229, the judgment was reversed; the court, in an opinion by Judge Lewis, holding: "There ought to have been given an instruction on the subject of involuntary manslaughter, punishment for which is fine and imprisonment." In Com. v. Matthews, 89 Ky., 287 (11 R., 505) 12 S. W., 333, the appeal was by the Commonwealth; but the court, through Judge Holt, prescribed the instruction upon involuntary manslaughter which should be given where the evidence tended to show an accidental killing, resulting from the careless handling of a gun. In Wood v. Com. (9 R., 382) 7 S. W., 391, the court, through Judge Holt, held that the circumstances did not justify the giving of an instruction as to involuntary manslaughter.

The cases cited seem amply to sustain the proposition that under our law the common-law offense of manslaughter has been subdivided by carving out of it the statutory crime of voluntary manslaughter, and leaving involuntary man-

slaughter to be dealt with as at common law. The term "manslaughter" has therefore become a generic term, covering two specific offenses, or degrees of homicide, punishable, the one under the statute, by confinement in the penitentiary, and the other, under the common law, by fine and imprisonment in jail. The common-law learning of the text-writers upon the offense of manslaughter can have no place in the definition of the two degrees of homicide which have been carved out of manslaughter by the effect of our statute, however apt such learning may have been under the ancient practice, when the punishment of both grades was a matter resting in the discretion of the judge. We are well aware that there are opinions by this court in which this distinction seems to have been wholly overlooked. In the opinion by Judge Williams in Sparks v. Com., 3 Bush., 111, 96 Am. Dec., 196, the court affirmed a judgment of guilty under an instruction upon manslaughter; citing 1 Russell, Crimes, p. 636, which correctly gives the common-law definition of "manslaughter," but makes no distinction between the voluntary and the involuntary grades thereof. So, in Chrystal v. Com., 9 Bush., 669, the offense was homicide resulting from the recklessly careless use of a loaded pistol; and the opinion by Chief Justice Hardin sustained an instruction on manslaughter; citing 2 Whart. Am. Cr. Law, section 1004, as to the common-law definition. The case of York v. Com., 82 Ky., 360 (6 R., 344) follows the cases of Sparks and Chrystal; the court seemingly overlooking the Conner case and the cases in 78 Ky., then recently decided. The case of Murphy v. Com., 15 R., 215 (22 S. W., 649), sheds no light on the question before us. The instruction given, and there considered, was upon the subject of voluntary manslaughter.

There are therefore three cases in which an instruction

upon manslaughter, without the limiting adjective, was sus-
tained, and one of these three was decided since the deci-
sion in the Conner case.  It will be seen, however, that the
great weight of authority in this State sustains the prop-
osition that the giving of such an instruction is erroneous,
and that the three cases mentioned must be regarded as
practically overruled.  We are clearly of opinion than an
instruction upon involuntary manslaughter should have
been given in the case at bar, and that the failure to give it
was prejudicial error.  This question, however, is not before
us, except as an incident to the question raised by the motion
to discharge.

Thus far we concur with counsel's contention.  But does
it follow that we must reach the conclusion which was
reached in the Conner case?  There the jury found the ac-
cused guilty of a crime which was not a degree of homicide,
and it was held that that verdict, under an indictment for
murder, was equivalent to a verdict of acquittal of all the
offenses of homicide.  In the case at bar, however, the jury
found the appellant guilty (under an erroneous instruc-
tion) of manslaughter—a term which covers two degrees
of homicide—and fixed his punishment at the statutory pen-
alty for the higher grade.  It was as if the jury had found
the accused guilty of murder and voluntary manslaughter,
and fixed his punishment at death, under an instruction
which justified such a finding.  However erroneous a record
might be which disclosed such a condition, we could not
construe such a verdict to be an acquittal; for it not only
did not find the accused not guilty of any of the crimes in-
cluded in the charge of murder, but in fact found him guilty
of two of them.  The Conner case is one in which the court
carried to its logical conclusion a highly technical rule of
law.  The effect of its application was apparently to de-

Spriggs v. Commonwealth.

feat the ends of justice. We are not criticising that opinion. Technical rules must exist, and must be applied in cases which come literally and logically within their scope. What we decide is that they will not be applied to cases not within their purview; and that it is not logical to construe a verdict that a man has been guilty of two offenses into a verdict of not guilty of any offense. There are numerous cases in which the court instructed the jury erroneously, either as to constituent elements of the offense, or as to the punishment to be inflicted. In such cases this court has granted a reversal. It has awarded the defendant a new trial, but it has not discharged him from custody as acquit. Nor does the case before us come within the rule laid down by Mr. Cooley (Const. Lim., 336), and the case of *Ex parte* Lange, 18 Wall., 176, 21 L. Ed., 872, as to judgments beyond the jurisdiction of the court rendering them, or forbidden by the Constitution. The judgment in this case was clearly within the jurisdiction of the court upon the offense charged in the indictment. Nor is it necessary for us to consider whether the verdict may be helped or cured by intendment. We think the instruction was erroneous, and, if a reversal had been sought, it would have been granted. But the defendant has carefully precluded himself from that relief, in the effort to obtain total immunity. He has taken his choice.

For the reasons given, we are of opinion that the order overruling the motion for a discharge was not erroneous, and it is affirmed.

Whole court sitting.

Petition for rehearing by appellant overruled.