CASE 71.—PROSECUTION AGAINST BENTON BROWN FOR
    HOMICIDE.—April 18.

## Brown v. Commonwealth

Appeal from Monroe Circuit Court.

H. C. BAKER, Circuit Judge.

Defendant convicted of voluntary manslaughter
and appeals. Affirmed.

1. Homicide—Evidence—Sufficiency—Evidence on a trial for homi-
    cide examined, and held to support a conviction of voluntary
    manslaughter.
2. Same—Harmless Error—Instructions—Where, on a trial for
    homicide, the jury found accused guilty of voluntary man-
    slaughter, as authorized by an instruction correctly defining
    voluntary manslaughter, any error in an instruction as to
    murder was not prejudicial.
3. Same—Voluntary Manslaughter—Instructions—Where, on a
    trial for homicide, the killing was admitted, and accused
    claimed that it was accidental, and the court charged that
    if accused intentionally, or in a wanton and reckless manner,
    without previous malice, discharged his pistol, and thereby
    killed decedent, a verdict of voluntary manslaughter should
    be found, the giving of an instruction that, if the accidental
    shooting was the result alone of the recklessly careless use
    of a loaded pistol by accused, a verdict of manslaughter
    should be found, and his punishment fixed as set in the
    previous instruction, was not open to the objections that it
    emphasized the effect of accused's carelessness in handling
    the pistol, and that it was contradictory to the previous
    instruction, in that it omitted the word "voluntary" before
    the word "manslaughter."
4. Criminal Law—Appeal—Review—Under Cr. Code, section 281,
    providing that the decisions of the court on motions for a
    new trial shall not be subject to exception, the Court of
    Appeals cannot reverse a conviction on a trial for homicide,
    because the trial court refused a new trial on the ground
    that the jury were permitted to separate during the trial

Brown v. Commonwealth.

and were guilty of misconduct in viewing the premises where the homicide occurred, without the permission of the court and in the absence of accused and his counsel.

DUFF & HUTCHERSON, MILLER & JACKSON, SHERMAN, SPEAR and W. H. WALDEN for appellant.

1. We submit that instruction No. 2 as given by the court covers all the law on the subject of voluntary manslaughter.

2. Instruction "3a" given by the court qualifying instruction No. 2 is clearly erroneous and was highly prejudicial to the defendant.

3. Incompetent evidence was admitted as to statements made by defendant which had no connection with the killing.

4. The jury were allowed to separate, or did separate after they were sworn and the trial on the case commenced.

5. The jury after being permitted to view the premises where the killing occurred in the presence of the sheriff and court, was again permitted to view the premises by the sheriff without the knowledge or consent of the court.

6. The evidence shows that the killing was accidental and the defendant should have been acquitted.

## AUTHORITIES CITED.

Roberson on Crim. Law and Procedure, vol. 1, page 235 and 254; Amer. & Eng. Ency. of Law, 1st Ed., 578; Rutherford v. Cometh, 78 Ky., 639 (1 Ky. Law Rep., 410); Abbott v. Cometh, 47 S. W., 576.

N. B. HAYS, C. H. MORRIS and BAIRD & RICHARDSON for appellee.

1. The appellant having complained in the court below for the first time in his motion and grounds for a new trial, of the alleged misconduct of the jury, the ruling of that court therein is not subject to exception nor to review by this court. (Criminal Code, sec. 281; Brown v. Commonwealth, 14 Bush, 398; Kennedy v. Commonwealth, 14 Bush, 340; Ellis v. Commonwealth, 9 Ky. Law Rep., 825; Crockett v. Commonwealth, 10 Ky. Law Rep., 159; Van Dalsen v. Commonwealth ——.)

2. The instructions given by the court are aptly drawn and embrace the whole law of the case. (Brown v. Commonwealth, 13 Ky. Law Rep., 373; Gullegor v. Commonwealth, 2 Duv., 163; Messer v. Commonwealth, 25 Ky. Law Rep., 700; Smith v.

Commonwealth, 93 Ky., 318; York v. Comonwealth, 82 Ky., 366; Commonwealth v. Mathews, 89 Ky., 287.)

3. This court cannot reverse a judgment of conviction if there is any evidence to sustain it.

4. This court under Civ. Code, sec. 340, cannot reverse in criminal cases unless "upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

Opinion of the Court by Judge Settle—Affirming.

Appellant was tried in the Monroe Circuit Court under an indictment returned by the grand jury of that county which charged him with the willful murder of Jeff Harlan. By the jury's verdict he was found guilty of voluntary manslaughter, and his punishment fixed at confinement in the penitentiary twenty-one years. The lower court refused him a new trial, and he has appealed.

Appellant's defense was accidental homicide. According to the evidence, Harlan was shot and killed by appellant at the door of the store of John Roton, in Tompkinsville, on the night of December 24, 1904. Appellant and deceased were about the same age, twenty-one years, had known each other from boyhood, and were apparently the best of friends. According to the testimony of John Roton, in whose store appellant was then employed as a salesman, the latter, in a conversation with him after the killing of Harlan, and as they were following the body to the hotel, to which it was removed, said: "I would not have killed Jeff for anything on earth. He was the best friend I had." No motive for the homicide was shown upon the trial, unless it grew out of something that took place in a conversation between appellant and deceased in front of the store a few minutes

before the shooting, in the hearing of Little Craw-
ford, who testified that appellant then remarked to
Harlan that he was going that night to a popcorn
party. Harlan said to him, "If I were you, I would
not go, for you are drinking," to which appellant
replied, "he did not care a damn what he did." As
Crawford then went into the store, he heard no more
of the conversation, if it was continued. There is
no doubt from the evidence that appellant was to
some extent under the influence of intoxicants that
night and at the time of the shotting; indeed, he
admitted it when testifying in his own behalf, and
after the shooting he evidently become more intoxi-
cated, for he testified that after following the body
of Harlan to the hotel he knew nothing of what
happened during the remainder of the night, though
he was afterwards arrested and put in jail.

There were several things said and done by appel-
lant immediately after the shooting that appeared to
be inconsistent with his innocence; for instance,
though numerous inquiries were made in his presence
by individuals of the gathering crowd as to the
identity of the slayer of Harlan, he made no reply,
and upon being directly asked by several persons,
among them a brother and sister of deceased, who
had shot him, he said he did not know, and in reply
to one or two of these inquiries he said deceased
must have been shot by a stray ball, as he was not
shot from the store, and, furthermore, that, if the
shooting had occurred from the store, it would have
been manifested by powder smoke in the store.
These statements, attributed to him, appellant
denied; but we think the great weight of the evidence
was to the effect that they were made by him, and

that he did not in fact admit his identity as the slayer of Harlan until the pistol with which he did the shooting was found by Roton, with one of its chambers containing an empty shell, and still warm from the firing of the shot. Although there were several persons besides appellant in the store at the time of the killing of Harlan, nearly all of them were at the rear end of the room, and it is a singular fact that not one of them claimed to have seen the shooting, though all heard the report of the pistol. Two or three of them, upon hearing the report, looked toward the front door, and saw appellant standing with his back to them and his face to the door. At the time one Bert High was in front of appellant, holding him by the shoulders. As High was the only witness near appellant when he shot Harlan, we here quote from the record the material parts of his testimony: "I was in Roton's store when Harlan was killed. Myself and Brown (appellant) were the only persons present. When the pistol was discharged, Harlan was in two and one-half or three feet of Brown. The defendant came around there with the pistol. I said to him, 'What are you going to do?' He said he was going to shoot. I asked him if it was loaded. He said he reckoned it was if he got hold of the right one. I said: 'You must not do that. They are liable to pull you.' I guess then in about a minute Harlan stepped to the door, and he said, 'Do not shoot.' About the time he said, 'Do not shoot,' I turned and looked down toward the other end of the store. About the time I looked down there the pistol fired. I do not think he intended to shoot Harlan. I saw Harlan, and knew him when he spoke. The light was shining out at the door. I

was facing the door, and Brown's right side was turned towards the end of the counter. After the shooting, I laid my hands upon Brown's arms. I am not related to either party, but was friendly to both. The last I saw of the pistol before it fired, Brown had it down by his side." The fact that Harlan was close to appellant when shot was demonstrated by the powder burns on his face. He must have been shot, too, while in the act of talking to appellant, as the pistol ball entered his mouth without touching his lips or teeth, severed the spinal cord, and broke the neck at the base of the brain. According to the testimony of Dr. Duncan, a skilled surgeon, Harlan's death must have been instantaneous.

Appellant testified in his own behalf to the effect that he and deceased were intimate friends, and that no trouble or misunderstanding had ever arisen between them; that on the night of the homicide no such conversation occurred between them as was related by Crawford, though he admitted that he and deceased were together out in front of the store when Crawford made his appearance; that he had with Crawford the conversation about some article he wished to purchase from the store, as testified by the latter; and that, leaving deceased in front, he and Crawford went into the store to get the desired article, after which appellant went out of the store, took a drink of whisky with Crawford, then returned, and had a talk with Harlan, who had in the meantime entered the store. According to appellant's further statement he then went to where two pistols were kept under the counter one out of repair and unloaded, and the other loaded and in proper condition for use, and getting, as he believed, the unloaded

pistol, he walked toward and near the door carrying
it in his right hand. What he said will better appear
from appellant's own language: "Bert High then
asked if the pistol was loaded, and I told him it was,
and I thought I would go out and shoot it off. Seeing
this scared him, I told him it was not, and I thought
it was not. I took hold of the pistol to show him
it was not, and at this juncture it was discharged,
and killed Harlan, who I did not see, just as he was
about to enter the storehouse. It went off accidently,
and if he (Harlan) said, 'don't shoot,' I did not hear
him. I saw some one just after the pistol went off
sinking down. I was greatly excited, and asked what
it was, for I did not know who it was." The case
was properly allowed to go to the jury. There was
some testimony conducing to prove that the shooting
was intentionally or wantonly and recklessly done by
appellant, and some that it was accidental; but the
jury, having weighed all the evidence, came to the con-
clusion that appellant's defense of accidental killing
was without merit, and therefore found him guilty
of voluntary manslaughter. Their finding is con-
clusive of the question of his guilt, unless there was
some error of law committed by the trial court which
can be said to have prejudiced his substantial rights.

Appellant insists that the lower court erred in
instructing the jury, and in refusing certain instruc-
tions asked by him. The instructions complained of
are numbered 1 and 3a. The first advised the jury
in what state of case they might find appellant guilty
of murder. It is properly worded, and, if this were
not true, it could not have been prejudicial, because
it did not influence the jury; for they found appel-
lant guilty of voluntary manslaughter as authorized

by instruction No 2, which was as follows: "If the jury believe from the evidence beyond a reasonable doubt that the defendant, Benton Brown, in said county and before the finding of this indictment, intentionally or in a wanton and reckless manner, without previous malice, fired off and discharged his pistol, and thereby shot and killed Jeff Harlan, they will find him guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for not less than two nor more than twenty-one years." By instruction No 3 the jury were told that if they believed from the evidence that the discharge of the pistol in the hands of the accused was unintentional, but further believed from the evidence beyond reasonable doubt that the killing of Harlan resulted from the careless use and handling of the pistol by the accused, they should find him guilty of involuntary manslaughter, and fix his punishment at a fine in any amount, or confinement in jail any time, in their discretion, or might in their discretion both so fine and imprison him. Instruction No. 4 told them that in the event they believed from the evidence beyond a reasonable doubt that appellant was guilty of one of the several offenses defined in the instructions, but should have a reasonable doubt as to the degree of the offense, it was their duty to find him guilty of the lesser one. By instruction 5 the jury were further told that if they believed from the evidence the killing of Harlan was accidental, and without carelessness upon the part of appellant, they should find him not guilty, or, if they had a reasonable doubt of his having been proven guilty, they should acquit him.

As the killing of Harlan was admitted by appellant,

and there was no claim of self-defense, we think the foregoing instructions embraced and properly presented to the jury all the law of the case; but yet another instruction, numbered 3a, was given by the court on motion of the Commonwealth's attorney, which advised the jury "that although they may believe from the evidence before them that the shooting and killing of Jeff Harlan was accidental, yet if they further believe from the evidence to the exclusion of a reasonable doubt that said accidental shooting and killing (if it was accidental) was the result alone of the recklessly careless use of a loaded, deadly pistol by the defendant, they should, notwithstanding the accident, find the defendant guilty of manslaughter, and fix his punishment as set out in instruction No. 2." It is contended by counsel for appellant that this instruction is contradictory of those already given, as to voluntary and involuntary manslaughter, and so reiterated and emphasized the effect of appellant's carelessness in handling the pistol as to minimize the question of accidental shooting and deprive him of any benefit from the evidence in regard thereto, and, besides, that the instruction was confusing to the jury because of the use of the term "manslaughter" without the limiting adjective "voluntary."

We do not think the instruction in question prejudicial. It, as well as instruction No. 2, correctly defined voluntary manslaughter, though the word "voluntary" is not used in No. 3a. In Montgomery v. Com., 26 Ky. Law Rep., 356, 81 S. W., 264, it is said: "It is essential to the commission of voluntary manslaughter that the homicide should have been willfully and intentionally committed, or under such

circumstances as to strike one at first blush as so reckless and wanton as to be felonious, though apparently not intended by the perpetrator.'' Bishop's New Criminal Law, vol. 1, section 314, says: ''Every act of gross carelessness, even in the performance of what is lawful, and a fortiori of what is not lawful, and every negligent commission of a legal duty whereby death ensues, is indictable either as murder or manslaughter.'' In York v. Com., 82 Ky., 360, 6 Ky. Law Rep., 334, we find this statement on the same subject: ''It may now be regarded as well settled in this State by numerous decisions of this court that where one intentionally does an act in such a reckless and careless manner that it is calculated to endanger human life, and death ensues, he is guilty of manslaughter, although the death of the person killed may not have been intended.'' Smith v. Com., 93 Ky., 318, 14 Ky. Law Rep., 260, 20 S. W., 229. So, if, as the jury were told in instruction No. 2, appellant ''intentionally, or in a wanton and reckless manner,'' discharged his pistol, and thereby killed Harlan, or if, as stated in instruction 3a, the latter's death, though accidental, ''resulted alone from appellant's recklessly careless use of a deadly loaded pistol, in either even he was guilty of voluntary manslaughter, and the omission from instruction 3a of the word ''voluntary'' could not have misled or confused the jury, as the fact that instruction 3a referred the jury to instruction 2 for the punishment to be inflicted upon appellant in the state of case therein predicated must have indicated to them that the offense described in 3a was voluntary manslaughter, as defined in instruction No. 2, and that they so understood it is demonstrated by the further

fact that the verdict named the crime of which they found appellant guilty "voluntary manslaughter."

In Spriggs v. Com., 113 Ky., 724, 24 Ky. Law Rep., 540, 68 S. W., 1087, after a review of all the authorities in this State, it was held: "The cases cited seem amply to sustain the proposition that, under our law, the common-law offense of manslaughter has been subdivided by carving out of it the statutory crime of voluntary manslaughter, and leaving involuntary manslaughter to be dealt with as at common law. The term 'manslaughter' has, therefore, become a generic term, covering two specific offenses or degrees of homicide, punishable, the one under the statute, by confinement in the penitentiary, and the other under the common law, by fine and imprisonment in jail. The common-law learning of the textwriters upon the offense of manslaughter can have no place in the definition of the two degrees of homicide which have been carved out of manslaughter by the effect of our statute, however apt such learning may have been under the ancient practice, when the punishment of both grades was a matter resting in the discretion of the judge." The conclusion stated in the opinion supra was deduced from the cases of Connor v. Com., 13 Bush, 714; Buckner v. Com., 14 Bush, 601; Trimble v. Com., 78 Ky., 176; Bush v. Com., 78 Ky., 268; Smith v. Com., 93 Ky.; 318, 14 Ky. Law Rep., 260, 20 S. W., 229; Com. v. Matthews, 89 Ky., 287, 11 Ky. Law Rep., 505, 12 S. W., 333. But it is conceded by the learned writer of the opinion that the distinction asserted is ignored by the court in the following cases: Sparks v. Com., 3 Bush, 111, 96 Am. Dec., 196; Chrystal v. Com., 9 Bush, 669; York

v. Com., 82 Ky., 360, 6 Ky. Law Rep., 334, and per-
haps others

It is, however, clear that none of the cases referred
to hold that if a person intentionally, or wantonly
and recklessly discharge a pistol in a store, street,
or other public place where people are wont to be or
congregate, and death thereby results to one of them,
such killing would not be voluntary manslaughter,
punishable by statute by confinement in the peniten-
tiary from two to twenty-one years. It is likewise
true that they contain nothing that impairs the com-
mon-law definition of involuntary manslaughter or
that questions the propriety of inflicting upon one
guilty of that offense the punishment of a fine, or
imprisonment in jail, either or both, as by the common
law provided. As already stated, the court might
safely have omitted instruction 3a; but, as it was in
substance but a repetition of instruction No. 2 as to
voluntary manslaughter, the error in giving it was
harmless. The first of the two instructions refused
appellant by the court might properly have been
given; but, as what both were intended to express to
the jury was better presented by the one instruction
given on appellant's motion, it was not error to
refuse them.

It is insisted for appellant that the court erred in
refusing him a new trial upon the ground that the
jury were permitted to separate during the trial, and
were also guilty of misconduct in going upon and
viewing the premises where the homicide occurred
without permission of the court, and in the absence
of appellant and his counsel. As to the first com-
plaint, it appears from an affidavit in the record that
on one occasion during the progress of the trial one

of the jury lingered behind the others as they were leaving the court-room in charge of the sheriff. This juror was momentarily separated from the other eleven, and passed a few words with some person in the court-room; but the sheriff soon discovered his absence, and at once returned with the remainder of the jury and took him in charge and away with them. It does not appear from the record that the juror thus briefly separated from his associates talked with any one about appellant's case, or to any one connected with it, and the attention of the court was never called to the fact of his separation from the other jurors until the matter was presented by the motion and grounds for a new trial. The facts as to the inspection of the place of the homicide were that, though the jury at the beginning of the trial had been allowed, in the presence of the court and appellant, and while in the charge of the sheriff, to view the premises, on Sunday and after the conclusion of the evidence they again viewed them under the charge of the sheriff, but without the permission of the court. It is unnecessary to determine the legal effect of this action of the jury, as it was not brought to the attention of the court until the filing of the motion and grounds for a new trial, though the same, as well as the momentary separation of one of the jury from the others, was known to appellant before the submission of the case to the jury.

It is, however, beyond our power to reverse this case for such errors as these; the right to do so being expressly denied by section 281, Cr. Code, which this court has repeatedly construed to be mandatory. Howard v. Commonwealth, 118 Ky., 1, 80 S. W., 211, 25 Ky. Law Rep., 2213; Curtis v. Commonwealth, 23

Ky. Law Rep., 267, 62 S. W., 886; Brown v. Commonwealth, 14 Bush, 398; Kennedy v. Commonwealth, 14 Bush, 340. Our examination of the record fails to disclose any error on the part of the trial judge in the admission or rejection of evidence.

Judgment affirmed.