## Davis v. Commonwealth.

(Decided February 3, 1922.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Instructions.—In a criminal trial every state of case, supported by the evidence, should be covered by an instruction, but it is not error to refuse to give an instruction which is not based upon the evidence.

2. Homicide—Unintentional Killing.—A homicide, unintentionally committed, by the careless use of firearms, in a way, which the user believes and has reasonable grounds to believe, is not dangerous to human life, and not in the performance of some unlawful act, is an accidental, unintentional killing.

3. Homicide—Voluntary Manslaughter.—A homicide committed by the wanton, reckless or grossly careless handling or discharge of firearms, in a way, which the user knows is dangerous to human life, is a voluntary manslaughter, although the user has no intention to kill.

4. Homicide—Reckless Use of Firearms—Voluntary Manslaughter.— When all the evidence tends to prove that a homicide was intentionally committed, and therefore murder or a voluntary manslaughter committed in sudden heat of passion or sudden affray, it is not error to refuse to instruct the jury, as if the homicide was the result of wanton, reckless or grossly careless handling or discharge of firearms, with the knowledge that the use of the weapon in that way was dangerous to human life, because in the latter state of case, the crime is voluntary manslaughter, although there was no intention to kill.

LOUIS I. IGLEHEART for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

The appellant, Ivo Davis, was tried upon an indict-ment accusing him of the crime of murder, and was found guilty by the verdict of the jury of the crime of voluntary manslaughter, and his punishment fixed at im-prisonment in the State Reformatory for a term of twen-ty-one years. Judgment of the court was rendered ac-cordingly. A motion for a new trial was overruled, and he has appealed.

The appellant seeks a reversal of the judgment and a new trial, insisting that the trial court erred to the prejudice of his substantial rights in failing upon the trial to instruct the jury concerning the law applicable to all the various issues which grew up out of the evidence. That the law applicable to every state of case supported by the evidence to any reasonable degree should be given to the jury is an axiom, but it is equally true that the law applicable to a state of case which the evidence does not conduce to support need not be given in an instruction to the jury, as the questions at issue would not be eluci-dated by instructions on abstract legal principles not sup-ported by the facts, though such an instruction is not always held to be prejudicial. Instructions defining mur-der, voluntary manslaughter, involuntary manslaughter, self-defense and accidental, unintentional killing were given. There was evidence upon which to base each of these instructions, except the one relating to self-defense, but its giving could not have been in any way prejudicial to appellant's rights, as it only directed an acquittal, if the jury believed a certain state of facts existed, but of the existence of which there was indeed no evidnce. It could only tend to minimize the cause of the prosecution. The appellant insists that there was no place in the case for the instruction upon voluntary manslaughter which was given, because the instruction was only applicable to a state of facts where the accused committed the hom-icide intentionally, but in sudden heat of passion or in sudden affray, and without previous malice, and that there was no evidence tending to prove that the accused was moved to the commission of the homicide by passion, or that the act was the result of sudden affray, or that the killing was intentional; but instead of such instruc-tion, it is insisted, there was evidence which tended to prove that the homicide was the result of the wanton, reckless and grossly careless use of a pistol by the ac-cused, and that the killing was wholly unintentional, and

an instruction upon the subject of voluntary manslaughter predicated upon such state of facts should have been given, and that the error of the trial court consisted not only in its failure to give such instruction, but the giving of the one which it did give, as well. These contentions make necessary a statement of the salient facts which the evidence tended to prove. The theory of the Commonwealth, which is supported by the overwhelming weight of the testimony, was that the accused and Luther Grimes, the victim of the homicide, bore no ill feeling toward each other, and had had no previous unpleasantness. On the occasion of the homicide the accused and Grimes, and quite a number of others, were gathered at the restaurant of John Pry. The accused was to some extent intoxicated. Grimes and James Nichols became involved in a quarrel, resulting in Nichols striking Grimes twice in the face with his fist, when Grimes started for the door to get out upon the street. The accused was within a few feet of the belligerents, and after Nichols had struck Grimes twice, and Grimes was endeavoring to escape at the door, the accused rushed toward him and struck him with his fist, and after Grimes got out of the house into the street, the accused drew a pistol from his pocket and shot him through the head, from the door step. Grimes immediately fell down and died, and the accused left the country. To an officer, who found the accused in the state of Iowa and arrested him, he stated that he and deceased were in a clinch when he drew his pistol and shot him. Doubtless the jury would have been justified, if it wholly believed that the above was the manner of the homicide, in imposing a much more severe penalty than it did, but it could not be seriously contended that the evidence of the above facts did not tend to prove a voluntary and intentional killing arising from a sudden affray, and the propriety of an instruction based upon the evidence of heat and passion or sudden affray.

Although the instruction upon voluntary manslaughter predicated upon evidence of the homicide being the result of sudden heat of passion or sudden affray and voluntary on the part of the appellant, was proper; but if there was, also, evidence tending to prove that the homicide was the result of wanton, reckless or grossly careless use of a firearm by the accused, an instruction on voluntary manslaughter presenting the law arising from such a state of facts, should have been given in ad-

dition to the other, because death caused from wanton, reckless or grossly careless use of firearms is voluntary manslaughter, although the accused had no intention of killing. If, however, all the evidence tended to prove that the homicide was not the result of wanton, reckless or grossly careless use of the pistol, or if all of the evidence tended to show that the shooting was intentionally done, there was no place for an instruction on the subject of the reckless or grossly careless use of the pistol. Voluntary manslaughter as the result of a wanton, reckless or grossly careless use of a firearm, exists only when there is an absence of malice aforethought and an absence of a specific intention to kill, or to do serious injury, and the killing results from the reckless or grossly careless handling of the firearm, with the knowledge on the part of the accused that the use of the weapon in that way was dangerous to life. Ewing v. Com'th, 129 Ky. 237; Speaks v. Com'th, 149 Ky. 393; McGeorge v. Com'th, 145 Ky. 540; Hunn v. Com'th, 143 Ky. 143; Sparks v. Com'th, 3 Bush 111; Chrystal v. Com'th, 9 Bush 669; Smith v. Com'th, 93 Ky. 318; York v. Com'th, 82 Ky. 360; Montgomery v. Com'th, 26 K. L. R. 356; Brown v. Com'th, 13 K. L. R. 372. The principle is based upon the theory that a man intends the natural consequences of his acts and what he is aware of or ought to be aware will result from the handling of a weapon in a way dangerous to life, although he actually has no intention to kill. The evidence upon which it is insisted for the accused that an instruction, covering such a theory of the case, should have been given was the testimony of appellant, who deposed that he and deceased were good friends, and that he had no intention of shooting, and did not intentionally discharge the pistol at Grimes, or at all, but was standing in the room in conversation with his brother, George Davis, and John Pry, when he was accused by them of having whiskey concealed in his pocket and requested to produce it, and when he denied the accusation, Pry insisted that he had whiskey because it caused his pocket to bulge out. Accused insisted that the bulge was caused by his pistol, and reached into his pocket and took out the pistol to demonstrate that it was the pistol and not a bottle of whiskey, when his brother saying that he was drunk, seized the pistol when it was immediately discharged, and the ball struck deceased in the head, who was somewhere within range. The cause of the discharge of the

pistol, the appellant insists, was to be presumed from some unintentional, accidental act, as he had no intention of shooting, and no intention of using the pistol other than merely to exhibit it. If such statements were facts, in removing the pistol from his pocket, his action was not unlawful, nor was such act heedlessly or recklessly done, nor does it appear that such handling of the pistol created or would reasonably be supposed to create any danger to human life, and if it was discharged by his brother seizing it, and the contents struck and killed the deceased, it was an accidental and unintentional homicide, to the guilt of which no penalty is attached, and it will be observed that an instruction was given upon that subject, which fully protected the rights of the accused. The other witnesses, who it is insisted, gave evidence tending to show that the discharge of the pistol was unintentional but caused by the reckless and grossly careless handling of the pistol, were James Nichols and George Davis, the appellant's brother. Nichols deposed that Grimes was going toward the front door, and he saw the appellant reach into his pocket and bring out the pistol and although George Davis seized the appellant's hand, the pistol was raised up and discharged in the direction of the deceased. George Davis deposed to a different story, and that was that he heard some one say, "I believe they are going to fight," and he turned around and saw the deceased going in the direction of the door, and appellant and Nichols, about three feet apart, were close behind him and moving towards him, and appellant was working with something in his pocket, and the witness rushed up behind, and when he got there appellant had the pistol in his hand, and he seized appellant's arm, and the pistol was discharged just at that time. The evidence of these two witnesses does not, in our opinion, tend to prove an unintentional shooting resulting from any gross carelessness in handling or discharging the pistol, but on the other hand they strongly tend to prove an intentional shooting and killing upon the part of the appellant, and although his brother was attempting to restrain him, he failed in his efforts. Hence, there was no evidence to support an instruction upon the subject of voluntary manslaughter by the reckless and grossly careless handling of the pistol, and it was not error to refuse to give it. The instructions fairly present the issues to be decided, except the one upon the subject of

self-defense, which was harmless to the accused as heretofore shown. There is no meritorious ground upon which it can be urged, that the accused has not had a fair trial.

The judgment is therefore affirmed.