### Yates v. Commonwealth.

(Decided September 30, 1924.)

## Appeal from Floyd Circuit Court.

1. Criminal Law—Statements of Person as to What Defendant Did and Said Held Hearsay.—Statements of persons to witness before homicide that defendant had taken his gun and said he would be prepared, and that she did not hear anything said by members of deceased's hunting party. or know who they were, were inadmissible as hearsay.

2. Witnesses—Evidence as to What Absent Witness said Inadmissible, where His Affidavit was Introduced as Deposition.—Where defendant introduced as deposition of absent witness an affidavit, Commonwealth could not introduce in contradiction statements of absent witness, in view of Civil Code of Practice, section 598.

3. Criminal Law—Admission of Incompetent Evidence Held Prejudicial.—In view of conflicting theories, and that jury might have adopted either, and of further fact that but little provocation or motive had been shown for killing, held, that case must be reversed for introduction of incompetent evidence of contradictory statements made by absent witness.

4. Homicide—Qualification Held Properly Given to Self-Defense Instruction.—Where each side claimed other was aggressor, but it was conceded that defendant fired before he was assaulted, though he said that it was accidental, qualification was properly given to self-defense instruction.

5. Homicide—Proper Instruction on Self-Defense Indicated.—Proper instruction on self-defense in homicide case indicated.

J. D. SMITH, A. J. MAY, W. N. COPE and EDWARD A. ALLEN for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Will Yates was indicted on the charge of murder and convicted of manslaughter, his punishment being fixed at twenty-one years in the penitentiary.

He was a tenant on a farm, living with his nine children, the oldest of whom was about grown. A path ran from the county road up a hollow by his house, and into a gap on the mountain. The latter place, known as Polly Ann gap, was a rendezvous for fox hunters, and the path a convenient way to reach it.

A week before the homicide, the deceased, Add Wilcox, was returning with a party from a fox chase about four o'clock in the morning. The defendant was disturbed by them and as they passed his home told them not to come back again or he would have a warrant issued for them.

On the following Saturday evening just after dark a party consisting of the deceased and seven others, wearing carbide lights on their caps and accompanied by six dogs, started hunting, traveling this path which ran about forty yards from the residence and stable, the latter being about fifty yards beyond the house.

While differing in detail the testimony of these witnesses is to the effect that they were going to Polly Ann gap to start hunting; that their dogs were in leash; that they were all friendly with the accused and anticipated no trouble with him; that they heard persons hallooing and chickens squawking as they were walking along, and at a point just beyond the house they heard a shot and then defendant appeared. Some say that he was cursing and others that he ordered them off the premises; that deceased attempted to reason with him; that he told deceased that he did not aim to be run over by him; that deceased told him he was not trying to do that and that he thought the road was a public passway, and that the defendant said I will kill you before you travel it, and shot him twice, killing him; that defendant then fired at another member of the party, who knocked him down with a willow cane with which he was walking. Both the deceased and the defendant fell to the ground and the other members of the party dispersed. Later some one procured permission to move the body.

One of the witnesses for the Commonwealth states that as they were passing the house a woman holloed to them, "Boys, you had better go back—if you go a step further you will be killed."

The defendant states that he had been plowing all day and came home late; that he was going to move to another place on the following Monday and the children were catching the chickens preparatory to moving; the chickens had become scattered and he had gone to the stable looking for them, carrying his pistol with him; that his attention was called to a large body of men coming through his premises; he did not know who they were but started toward them, and as he approached he stumbled in the grass and fell, accidently discharging his pistol; this was about forty yards from them, and that he got up and met them and told them to get off his possessions.

The only one who spoke was Add Wilcox, the deceased. By that time they had surrounded him, and Wilcox was in front of him, and told him that for a long time he had been wanting to give him a good threshing, and thereupon struck him across the head with a broomstick which he was using for a cane; that as Wilcox made the second stroke he fired; he was on one knee and Wilcox was standing over him; he fired twice and fell unconscious and later was found at that spot by his children and carried home. The next morning he went to Paintsville and surrendered.

He had a severe wound on his forehead, which bled profusely, and a broken broomstick was found on the following morning at the place of the encounter. He admits that on his way home on the afternoon before he stopped at the house of John Branham, a neighbor, and got his pistol and carried it home; this pistol had been carried to Branham's a few days previous by his son, and he says he did not want his son to be carrying it around, although he (plaintiff) carried it from the time he got it until Wilcox was shot. No threats or other evidence of motive are shown. There is other evidence that Wilcox was using a broomstick as a cane.

It will thus be seen that according to the evidence of the Commonwealth's witnesses the defendant was armed waiting in their path, and fired upon them without provocation; while his contention is that they were unlawfully and forcibly attempting to alarm, intimidate and maltreat him.

Defendant introduced as the deposition of Elva Branham an affidavit as follows:

"I was near a gate at the mouth of the branch on which Will Yates lived on the night of the killing of Add Wilcox and heard Add Wilcox and several other men talking as they entered Yates field about Yates ordering them to stay out, and I heard one of them whom I recognized as Add Wilcox say, 'We will go on through and if Will does anything we will put the powder to him.' In a few minutes afterward I heard four shots fired near the house of Will Yates."

In contradiction of this statement the court, over the objection and exception of defendant, permitted the Commonwealth to prove by Mrs. Sam Hunter that Elva Branham was at her house that night and had a talk with her in reference to this matter in which she said, "She did not know the men, she said, nor did not hear a word— Yes, she said there was going to be trouble on the branch tonight, and I says, 'No there won't, Elva,' and she says, 'yes, there will, for I seen a gang of men going up the branch and they were going to have trouble,' and I says, 'No, they won't, Elva.' 'Yes, but she says they will; Mr. Yates come around home this evening and got his gun and said he would be prepared for them when they come.'" This was error. As introduced it was mere hearsay and incompetent as substantive evidence. Nor was it admissible in contradiction of Elva Branham.

"Before other evidence can be offered of a witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place and persons present, as correctly as the examining party can present them."
. . . Sec. 598, Civil Code; Murphy v. May, 9 Bush 33; Wilson v. Com., 140 Ky. 36; Higgins v. Com., 142 Ky. 647; Craft v. Com., 81 Ky. 250. In view of the conflicting theories, and of the fact that the jury might have adopted either, and of the further fact that but little provocation or motive had been shown, this incompetent evidence may have been extremely prejudicial, if not of controlling force, and for this reason the case must be reversed.

It is complained that a qualification should not have been given to the self-defense instruction. Each side claimed that the other was the aggressor, but it is conceded that defendant fired before he was assaulted,

though, he says that was accidental. This was a question for the jury, and coupling this incident with the other testimony, we think the qualification authorized.

The instructions on self-defense are otherwise criticised and perhaps contain some elements not authorized by the evidence.

Without setting them out in detail, on another trial in lieu of the fourth and fifth instructions, the court will tell the jury:

> Although the jury may believe from the evidence beyond a reasonable doubt that the defendant, Will Yates, shot and killed Add Wilcox, yet if they further believe that at the time he did the shooting and killing as aforesaid, he, Will Yates, had reasonable grounds to believe and did believe that the said Add Wilcox or Chuck Childers, Arch Childers, Taulbee Harmon, Jim Childers, Tom Tackett, Okie Wilcox, Harry Baldridge, of any one or more of them acting in concert with said Add Wilcox, was then and there about to inflict upon him, the said Will Yates, death or great bodily harm, then the defendant had the right to use such means as was necessary or reasonably appeared to him to be necessary to avert the impending danger, real or apparent, and if you believe that in shooting and killing the said Add Wilcox, the defendant used only such means as was necessary or reasonably appeared to him to be necessary to avert such danger, then you will find him not guilty on the grounds of self-defense and apparent necessity.

> But, if the jury believe from the evidence beyond a reasonable doubt that the accused, when he was in no danger, real or to him apparent, of death or great bodily harm at the hands of the deceased or any of his party, began the difficulty by shooting at him, or some one of them, or by making a demonstration of shooting at him or them, and so made the danger to himself excusable on the part of deceased, in his or their necessary or apparently necessary self-defense, then in either of these events the defendant cannot be acquitted on the grounds of self-defense.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.