## Young v. Commonwealth.

(Decided May 14, 1926.)

## Appeal from Bell Circuit Court.

1. Criminal Law—Defendant Held to Waive Error, if Any, in Admission of Evidence, by Failing to Object to Such Evidence or to Request Judge to Instruct Jury Concerning its Effect.—Defendant held to waive error, if any, in admission of evidence by failing to object to such evidence or to request judge to instruct jury concerning its effect.

2. Homicide.—Evidence of Condition of Deceased's Pistol on Morning Following Homicide, Indicating it had Not been Fired, Held Admissible.—In prosecution for murder, evidence as to condition of deceased's pistol on morning following homicide, which indicated that it had not been fired, held admissible, where there was evidence to show that when examined it was in same condition as at time of homicide.

3. Homicide.—Where there was no Evidence that Defendant Killed Deceased in Defense of His Father, Self-defense Instruction Confining His Right to Kill Deceased to Defense of Self Held Proper. —In prosecution for murder, where there was no evidence that defendant's father was in danger at time of homicide or that defendant killed deceased in defense of any one but himself, self-defense instruction confining his right to kill deceased to defense of himself held proper.

4. Homicide—Question of defendant's guilt in prosecution for murder held for jury on conflicting evidence as to self-defense.

5. Criminal Law.—New Trial will Not be Granted Because of Newly Discovered Evidence Unless Affidavits of Alleged Newly Discovered Witnesses, Containing Evidence Which they will give, Accompany Motion for new Trial.—New trial will not be granted because of newly discovered evidence, unless affidavits of alleged newly discovered witnesses, containing evidence which they will give, accompany motion for new trial.

J. G. ROLLINS, for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

Jointly indicted with John Young, his father, for the crime of murder, the appellant was on his separate trial found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for a period of ten years.

Five grounds are relied on for reversal, the first of which is that the court erred in overruling a demurrer to the indictment. Counsel has pointed out no defect in this indictment, and, after carefully reading it, we are convinced that it is sufficient in law.

The next three errors claimed are error in the admission of evidence; error in instructions; and error because the verdict is not supported by the evidence. To properly understand these claims, a short *resume* of the facts of the case is necessary.

The appellant and the deceased, Ed Bingham, lived in adjoining houses near the right of way of the L. & N. R. R. just below the mouth of Dorton branch in Bell county. These two houses were part of a row of houses facing the railroad, at one end of which row the appellant lived and at the other end of which his father lived. The homicide occurred about 7 o'clock in the evening of January 30, 1925. Just before its occurrence, appellant and his father were seated in the house where appellant lived. Some eight or nine shots, conceded to be pistol shots, were heard outside, most of the witnesses locating these shots on the railroad right of way. Some five or ten minutes thereafter another round of pistol shots was heard. Appellant says that on hearing this second round of shots he became apprehensive that some building, possibly the home of his father, was on fire, as the firing of a gun was the usual alarm for a fire given in that locality. He further says that he and his father thereupon went down the path in front of the row of houses to where the father lived, passing, in so doing, the home of his brother-in-law, Bob Collett. They did not stop here to inquire if this house was on fire. On arriving at the father's home, appellant and his father learned that there was no fire at that place. Appellant says that he then determined to go to the home of a man by the name of Evans for the purpose of calling the police at Pineville to have them come up and arrest the one who was firing the pistol. He admits that he did not know when he set out

on this errand who it was that was firing the gun. Although there was a telephone in the house of Ed Bingham and almost everybody else in that neighborhood knew of its presence there, appellant, although he had lived in close proximity to this house for a long time, professed not to know that Bingham had such a phone. At all events appellant armed himself with his father's shot gun, a Winchester gun, which had to be cocked with the thumb before it could be fired. The evidence for the Commonwealth shows that, as Young passed the house of Bingham, a loud report was heard, the report of a shotgun, and Bingham, who was standing in his doorway, fell mortally wounded; his body being in the doorway, partly on the porch and partly in the room. It is conceded that a bright fire was burning in the room and that when the door was open one standing in the doorway could be seen. The witnesses for the Commonwealth testified positively that some ten minutes had elapsed since the last round of firing had been heard on the railroad, and that at the time Bingham was shot there was no other gun fired than the shotgun. On the other hand, the evidence for the defense is that, as appellant passed the house of Bingham, his father then being some ten or fifteen feet behind him, a pistol was fired from the porch of this house at the appellant, the bullet grazing his forehead and causing him to sink to his knees, in which position he cocked his gun and fired at the figure on the porch. Appellant swears that the door from the porch to the room was closed at this time, and it was so dark that no one could see just who it was that was on the porch. He undertakes to explain the position of the body of Bingham when it was found by saying that Bingham, after being shot, must have stumbled against the door and either knocked it or pushed it open. The evidence for the Commonwealth tended to show that Bingham was sober on this occasion. Appellant produced evidence to show that Bingham was drunk, although some of his witnesses, when interrogated along this line, seemed to be of the opinion that Bingham was sober. The deceased's father, who was in the near neighborhood at the time of the shooting, immediately went to the house of his dying son. He arrived there within a very few minutes after the shooting and found a pistol belonging to Bingham lying on the table in the middle room. Bob Collett, one of the witnesses for the appellant and the first man to reach the side of the dying man, says that when he got there he saw lying on the

porch near to Bingham's hand a pistol which he picked up and put on the table. We will speak more of this pistol later.

The complaint with regard to the admission of testimony is first directed to the rebuttal evidence given by Gracie Philpot, George Williams, Tommy Collett and Tim Philpot, it being the contention of the appellant that the court should have admonished the jury concerning the effect of such testimony. We have carefully examined the transcript of the evidence herein, and find with reference to Gracie Philpot that no objection whatever was made by the appellant to her testimony or to any part thereof, nor was any request made of the presiding judge to instruct the jury concerning the effect of such testimony. The same is true with reference to the rebuttal testimony of Tommy Collett. So far as the rebuttal testimony of George Williams is concerned, no objection was made to any of it except one question, which objection the court in effect sustained. As to the testimony of Tim Philpot, the appellant objected only to one question which bore on a very immaterial point in the case. It is obvious that in this state of the record the appellant waived the error claimed, if there was any error, a point we need not decide. Anderson v. Commonwealth, 205 Ky. 369, 265 S. W. 824.

It is next contended that the court should not have permitted evidence to be introduced concerning the condition of the pistol hereinbefore mentioned when it was examined on the morning following the night of the homicide. The pistol was a German Luger pistol, automatic in its operation. Its magazine held nine cartridges, and when this pistol was fired the mechanism of the gun would, when the empty shell was ejected in the course of firing, bring another cartridge into place in the barrel. The witnesses testified that when this gun was examined on the day following the homicide there was no cartridge in the barrel although there were seven in the magazine. The evidence tended to corroborate the other testimony of the Commonwealth to the effect that this gun had not been fired by Bingham just before he was shot by Young. Appellant contends that the examination of this gun was too far away from the time of the homicide, and that too much opportunity had been given others to get to the gun, and that for these reasons the court should not have permitted its condition when examined to be detailed to the jury. To support this contention, appel-

lant points out that one of the witnesses for the Commonwealth, a brother of the deceased, testified that when his father picked the gun up from the table, as we have stated above, his father gave him the gun, and that he then put it into a drawer of a bureau standing in the room, where it remained until the following morning, when he got it out of the drawer at the request of his father for examination. On the other hand, the father testified that, immediately after his son put the gun into the bureau drawer, he took it out, put it in his pocket and kept it there until it was examined on the following morning, and that its condition then was the same as when he found it immediately after the homicide on the table where it had been put by Collett, appellant's witness. It thus appears that there was evidence to show that the gun when examined was in the same condition as it was the night before and therefore the court committed no error in permitting to go to the jury testimony regarding its condition on such examinaton. This matter was fully gone into and discussed in the case of Bates v. Commonwealth, 210 Ky. 421, 276 S. W. 119, and the same conclusion was there reached as here. The court committed no error in admitting this evidence.

We have examined the other objections to the evidence complained of and find no merit in any of them.

The next contention is that the instructions were erroneous and the complaint with regard to them is that the self-defense instruction confined the appellant's right to kill the deceased to the defense of himself. He insists that the instruction should have been broadened so as to allow him to kill the deceased in the defense of himself or his father. The fallacy of this contention lies in the fact that there was no evidence tending to show that John Young, the father, was ever in any danger, real or apparent, or that appellant fired the shot, which admittedly killed the deceased, in the defense of anybody but himself. As well said by this court in the case of Davis v. Commonwealth, 193 Ky. 597, 237 S. W. 24:

> "That the law applicable to every state of case supported by the evidence to any reasonable degree should be given to the jury is an axiom, but it is equally true that the law applicable to a state of case which the evidence does not conduce to support need not be given in an instruction to the jury, as the questions at issue would not be elucidated by instruc-

tions on abstract legal principles not supported by the facts.''

As there was no claim by appellant or any of his witnesses that he shot in the defense of his father, the court did not err in omitting from the self-defense instruction any reference to the father.

With regard to the fourth ground relied on for reversal, the statement of the case above set out discloses that it was a case for the jury. A large number of witnesses supported the Commonwealth's theory that this was a homicide without provocation or excuse. The appellant produced a number of witnesses tending to show that he shot in self-defense. Under such circumstances it was for the jury to say which set of witnesses it believed. Holcomb v. Commonwealth, 207 Ky. 372, 269 S. W. 349.

The last ground relied on, is that the court should have granted a new trial because of newly discovered evidence. No affidavits of the newly found witnesses were filed showing what they would testify to if given an opportunity to do so. It is the unvarying rule that a new trial will not be granted because of newly discovered evidence unless the affidavits of the alleged newly discovered witnesses, containing the evidence which they will give, accompany the motion for a new trial. Lambdin v. Commonwealth, 195 Ky. 87, 241 S. W. 842; Fleming v. Commonwealth 175 Ky. 655, 194 S. W. 788; Brennon v. Commonwealth, 169 Ky. 815, 185 S. W. 489.

No error appearing prejudicial to the substantial rights of the appellant, the judgment of the lower court is affirmed.

Judgment affirmed.