## Johnson v. Commonwealth.

(Decided September 28, 1926.)

### Appeal from Pike Circuit Court.

1. Homicide.—Verdict of manslaughter, supported by weight of evidence, cannot be disturbed as against evidence.
2. Witnesses.—Where Commonwealth witness denied making statement that he was asleep at time of homicide, permitting, on re-examination, his version of conversation, held not error.
3. Criminal Law.—It is presumed that jury followed court's instruction not to consider testimony ruled out.
4. Criminal Law.—Error in admission of evidence of attempted intimidation of state's witness out of defendant's presence held not prejudicial, where court instructed jury not to consider it, and evidence on proper foundation might have been received to impeach defendant's witness.
5. Homicide.—Where defendant admitted shooting, which fact was proved by all witnesses present, admitting victim's declaration that defendant shot him held not prejudicial.
6. Homicide—Admitting Evidence of Wife of Victim of Statements Made to Her by Defendant that he Would Get Her Some Day Held Competent.—Testimony of victim's wife about a month and a half before homicide defendant said he ought to kill her and husband because she did not take defendant instead of her husband, that he would get her some day, held competent on question of malice.
7. Homicide.—In murder prosecution, testimony of victim's wife that she was mother of child held properly admitted to fix time and show circumstances under which threats of defendant to her were made.

8. Criminal Law.—Defendant was not prejudiced by question of Commonwealth witness as to whether witness' mind was good at time testified about, where exception thereto was sustained.

9. Homicide.—Where defendant claimed right to shoot only in defense of himself or R., correct instruction on self-defense held not error as not including defense of others.

10. Criminal Law.—Under statute, judgment of conviction should not be reversed for error of law unless on whole case substantial rights of defendants are prejudiced.

ROSCOE VANOVER for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Kel Cable and Tom Johnson were indicted in the Pike circuit court for the murder of Pleas Ratliff. On the trial of the case Cable was acquitted. Tom Johnson was found guilty of manslaughter and his punishment was fixed at two years' imprisonment in the penitentiary. He appeals. The proof for the Commonwealth showed these facts:

Kel Cable was looking for a dog that was lost. Sam Cable was in the car with him. They had information that Pleas Ratliff knew where the dog was. They met him at a store in the neighborhood and he agreed to go with them in the car. The person he thought had the dog was a relative of Tom Johnson and Johnson also agreed to go with them. They did not find the dog at the place Pleas indicated and after riding around some time in the car started back. When they reached the house of John Davis Bentley they blew the horn several times and stopped the car. Sam Estep and Alice Bryant were down at the barn feeding. Estep had a light in a bottle. Kel Cable called to them and they went down to the car with the light. The lights on the car were out. Kel Cable got out of the car and walked down the road a few yards with Alice Bryant. He told her he had lost his dog and asked if she had seen it. She said she had not, and while they were talking Ratliff got out of the car with his pistol in his hand and walked down to them. He said to Alice Bryant, with an oath, "Take a drink;" she said "No." He repeated the request with another oath and about that time he jerked his pistol up; Kel Cable knocked the pistol away and the shot went in the ground. Kel

got between him and the woman and commenced pushing him back toward the car with his arm around him, telling him to drop the pistol and not shoot any more. Pleas said, "I will shoot again if I want to." They had by this time gotten up near the car. Tom Johnson got out of the car and said, "Cut that out." When he got up close to them he said, "I will show you what a real man is." He then said twice, "Turn it loose." Pleas said, "I dropped it back there in the road." Johnson said, "Drop it," and about that time fired his pistol. The ball went through Cable's arm that was around Ratliff and into Ratliff's body. He died from the wound a few minutes later there in the road.

On the other hand, the proof for the defendant was in substance this: When Pleas Ratliff started to get out of the car he pointed his pistol at Sam Cable and said, "Get out of the way." After walking about eight feet he came back to the car and said, "Isn't my pistol cocked?" Sam said, "Yes," and let it down for him. Sam said something about keeping the pistol and Pleas said, "No you won't." He then walked to where Kel Cable and Alice Bryant were and a shot was fired. Kel came running back and Johnson stepped out on the running board of the car. Kel said, "Let's go boys, I am shot." Johnson spoke to Pleas when he came up with the pistol and Johnson grabbed him. Pleas said, "I will show you what a real man is." Johnson held to the pistol until he saw that Pleas was going to take the pistol; he then grabbed his. Pleas jerked his pistol out of his hand and about the time that he got the pistol from Johnson, Johnson came up with his pistol and fired at Pleas; the shot killed him.

The evidence is undisputed that Pleas Ratliff was very drunk and had whiskey in his pocket, but from all the circumstances and the actions of the parties it is hard to believe he was the only one of the party who was drunk. The weight of the evidence, considering the circumstances shown, is decidedly with the Commonwealth, and the verdict can not be disturbed on the ground that it is against the evidence.

A reversal is also asked for error of the court in the admission and rejection of testimony and in the instruction on self-defense.

On cross-examination by the defendant Wade Ratliff, a witness for the Commonwealth, was asked if he had not at a certain time and place told Bowles Belcher

that he was asleep and did not know what happened at the time of the homicide. He denied making this statement. On re-examination by the commonwealth he was asked to tell what he did tell Belcher and he said that the conversation between him and Belcher was as to what occurred at the time of the arrest of the defendant and not as to the time of the homicide, stating what he did tell Belcher. This was only his explanation as to what occurred between him and Belcher, and there was no substantial error in letting him give his version of the conversation while on the stand.

When Alice Bryant was on the stand she was allowed to tell that the next evening after the homicide John Johnson, a brother of the defendant, and Kel Cable came to her and took her to the house of the father of the defendant. She was then asked if the defendant was there and said, "Somewhere about there." She was then asked, "Did they say anything to you about whether or not they would let you leave there?" and answered over the defendant's objection, "No, sir; John said, 'Stay here, we will take you to Pikeville in the morning.'" She was then allowed to state this, over the defendant's objection: "Kel said, 'If you don't tell about him saying that he dropped the gun I will give you $25.00, but if you do I will send you to the penitentiary.'" This was error as it was not shown that Tom Johnson was present or had anything to do with it; but at the conclusion of the witness' testimony the court ruled all this out and distinctly told the jury not to consider it. So we must assume that the jury obeyed the instructions of the court. In fact this evidence, upon proper foundation laid, might have been introduced in rebuttal to show the bias of Kel Cable, who was a witness for the defendant. But as the case was submitted to the jury they were not allowed to consider it at all. The defendant was not, therefore, prejudiced by the course followed at the trial.

Anderson Estep, who was at his house two hundred feet away when the shooting occurred and went right on down there, was permitted to testify that when he got there he asked Pleas Ratliff who shot him and he said, "Tom did it." This was objected to, but plainly its admission was not prejudicial to the defendant, for he admitted shooting the deceased, and this fact was proved by all five of the witnesses who were present.

Mrs. Pleas Ratliff was introduced as a witness to show malice and allowed to testify that about a month

and a half before the homicide the defendant came to her and said, "Dog gone you, I ought to kill you and Pleas Ratliff both." I said, "Why?" He said, "Because you did not take me instead of him; I will get you some day." She was also, allowed to testify that she was then the mother of one child. This evidence was competent on the question of malice. Its weight was for the jury, but it was properly admitted. The fact that she was then the mother of a child was only admitted to fix the time and show the circumstances under which the declaration was made, and it was proper to show this.

Kel Cable was recalled by the Commonwealth and asked to state as to the number of shots fired as they came down the creek before they got to the Bentley house. He said there were only two or three or that was all he heard. He was then asked this question: "Did you have one of the bad spells on you at the time you were shot or was your mind good? Objected to—sustained—defendant excepts." It is hard to see how the defendant was prejudiced by this. His exception to the question was sustained and that was the end of the matter.

The court by its instruction on self-defense told the jury in substance to acquit him if he did the shooting in defense of himself or Pleas Ratliff. He now complains that the court did not give him the right to shoot in defense of Alice Bryant, Sam Cable and other persons who were there. But in his own testimony he explicitly stated that he shot in defense of himself and he did not pretend that Alice Bryant or Sam Cable or anybody else was in danger. The other witnesses he introduced all testified substantially to the same effect. Alice Bryant testified that she had left before the shooting and nobody contradicts it. Sam Cable was in the car and had had nothing to do with the trouble. The instruction was as favorable to the defendant as any evidence offered on the trial warranted.

Under the old Code it was provided that a judgment of conviction should be reversed for any error of law appearing on the record. Under this provision many cases were reversed for irregularities occurring on trials where the ends of justice did not require a reversal. So to remedy this the statute was amended and it was provided that a judgment of conviction should not be reversed for any error of law unless upon the whole case the court is

satisfied that the substantial rights of the defendant were prejudiced.

On the whole record the court is satisfied that on the trial no substantial right of the defendant was prejudiced.

. Judgment affirmed.