## Bingham v. Continental Casualty Company.

(Decided April 22, 1927.)

### Appeal from Bell Circuit Court.

1. Insurance.—In action on accident policy not covering injury resulting from intentional act of any person except in assault for purpose of burglary or robbery, evidence that insured had roll of bills before being shot which were not found in his clothes afterwards held insufficient to take case to jury on issue whether insured was shot in assault to rob.
2. Insurance.—Beneficiary did not sustain burden to show that insured was killed in assault for purpose of burglary or robbery, within requirement of accident policy, by evidence which was as consistent with theory of killing for revenge as for robbery.
3. Insurance.—In action on accident policy not covering injury resulting from intentional act of any person except in assault for purpose of burglary or robbery, beneficiary, who pleaded character of death in specific terms as being an assault for burglary or robbery, had burden of proof.

JAMES M. GILBERT for appellant.

N. R. PATTERSON for appellee.

Opinion of the Court by Judge Dietzman—Affirm-
.ing.

In this action brought by the appellant against the
appellee to recover the amount of an accident insurance
policy on the life of her husband of which she was the
beneficiary, the court, at the close of her case, peremp-
torily instructed the jury to find for the appellee, and she
has appealed.

The policy sued on insured the life of Ed Bingham
against loss effected solely and independently of all
other causes by the happening of an external, violent, and
purely accidental event. A subsequent clause in the policy
provided that it did not cover any loss if the injury caus-
ing it resulted from the intentional act of the insured or
of any other person except, however, assaults committed
upon the insured for the sole purpose of burglary or rob-
bery. By an amended petition, appellant admitted that
Ed Bingham had been killed by the intentional act of
Frank Young, but she claimed that her husband had been
killed in the course of an assault committed for the sole
purpose of robbery. To sustain her contention, she in-
troduced testimony tending to prove the following facts:

Just after dark, and about half an hour before Ed
Bingham was shot, he and the appellant were out on the
railroad track a short distance in front of their home, and
while there he fired his revolver at least one and possibly
more times for the purpose of testing it to see whether it
would hang or not. At that time the appellant observed
that her husband had a roll of money on the outside of
which a $20 bill was wrapped, but she did not remember
the size of the roll. The next time she saw him he was in
the hospital, where he had been taken after he was shot,
and where he soon died as a result of the gunshot wound.
Ed Bingham was shot while standing on the front porch
of his home just in front of the doorway leading into
a room where a bright fire was burning. Immediately
after the shot which fatally wounded him, his father, who
was living nearby, rushed over to the house and found
him lying on the front porch with a man by the name of
Bob Collet beside him. Bingham's pitol was then lying
on the table in the dining room. The father had heard
no quarreling prior or subsequent to the shot. He had
seen his son in Pineville that day with some $40 to $50
upon him. After the shooting, he examined his son's
clothes and found no money. He admitted, however, that

this examinatoin took place in the hospital the next day after his son was killed and after the clothes had been removed from the body. He said that when he got to the porch just after the shooting, his son, who was then conscious, exclaimed, "They killed me and killed me for nothing."

Nancy Williams, who lived near by, said that just after the shooting she looked from her window over to Bingham's house and saw somebody stooping over the person of the deceased, but she did not know who it was. Gracie Philpot also testified that from a house some 90 feet away she saw somebody on the porch just after the shot was fired, but she too did not know who it was. Robert Collet testified that he was in his house about 20 or 30 feet away from Bingham's house with the door shut. When the shot was fired, he at once jumped up, opened his door and ran over to the porch of Bingham's home. He was asked, "Had there been time for anybody to get to that body before you got there?" He answered, "I don't think so." He was then asked, "You are quite positive you were the first man there?" and he answered, "Yes, sir." He further testified that it could not have been a half minute between the time when the shot was fired and the time when he got to the porch, that he saw no one around, and that when he got to the porch he stooped over, picked up the wounded man's head and held it until his father came. It was undoubtedly Collet whom Nancy Williams and Gracie Philpot saw on the front porch of the Bingham home.

This was all the testimony produced bearing on how or why Ed. Bingham was shot. It is obvious that there was not enough to take the case to the jury on the question of whether or not the deceased had been shot during the course of an assault with intent to rob. It is true his wife saw him with some money about half an hour before the shooting, and it is true that on the next day no money was found in his pockets, but he may have taken the money out of his pocket and put it in the drawer or some other place for safe-keeping, even as he or some one else placed the pistol which he had out on the right of way on the table in the dining room. Collet testified that it was scarcely half a minute from the time he heard the shot to the time he got to where Bingham was, and that he saw no one around. It is obvious that in this short time no one would have had opportunity to have robbed Bingham. The deceased himself said, "They killed me and

killed me for nothing.'' The person whom Gracie Philpot and the witness who lived on the hillside saw on the porch stooping over was undoubtedly Collet, who admitted that he went to the body and held the head of Bingham until others came.

The evidence is just as consistent with the theory that Bingham was shot for the purpose of revenge as it is with the theory that he was shot for the purpose of robbery. If in one state of case, the plaintiff may recover, and, on another, he cannot recover, and the evidence for the plaintiff tends no more strongly to prove the first state of case than the second, no recovery can be had. Aetna Life Ins. Co. v. Rustin, 151 Ky. 103, 151 S. W. 366. Appellant insists, however, that under this Rustin case she was entitled to go to the jury. In some ways, the Rustin case is like the case at bar. The policies in both cases are pretty much the same except that in the Rustin case the insurer was liable for 10 per cent. of the face of the policy if the injury was intentionally inflicted on the insured by any one else, while in this case the insurer is liable for no part of the face of the policy in such state of case, both policies providing, however, full liability if the injuries were inflicted during an assault for the purpose of robbery. In the Rustin case, no concession was made in the pleadings as to the manner in which the injury was inflicted. All that appeared in evidence was that Dr. Rustin, while on the front porch of his home, was shot. We held that the burden of showing that he had been shot intentionally was upon the insurer, under the rule that, where a policy contains a general clause containing a promise to pay and also a separate and distinct clause which has the effect of taking out of the general clause something which would otherwise be included in it, a party relying on the general clause may, in pleading, set out that clause only, and it then devolves on the insurer to plead and prove the facts bringing the case within the exempting clause. However, in the case before us, appellant expressly conceded in her amended petition that her husband had been intentionally shot by Frank Young. She then alleged that Young had shot her husband for the purpose of robbery.

Whether had the appellant contented herself with just alleging sufficient facts to bring her case within the general clause of the policy, it would then have devolved on the appellee, not only to prove that Ed. Bingham had been intentionally shot by Frank Young, but also that

he had been so shot not in the course of an assault with intent to rob, as held in the case of Olson v. Southern Surety Co., 201 Iowa 1334, 208 N. W. 213, and expressly not decided in the case of Ging v. Travelers' Insurance Co. of Hartford, 74 Minn. 505, 77 N. W. 291, we need not decide. Appellant did not so content herself. On the contrary, she undertook in her amended petition to describe the character of the accidental death her husband sustained, and for which she said the insurer promised to pay. She did not plead in general terms but in specific terms. Having alleged the exact way in which her husband was killed accidentally within the meaning of that term in the policy, she had to prove her allegations in order to recover on that policy. The burden of proof then being upon the appellant, she did not sustain it by proving facts which were as consistent with a theory for which she was not entitled to recover as with one for which she was entitled to recover. The lower court therefore committed no error in peremptorily instructing the jury to find for the appellee.

Although the case of Young v. Commonwealth, 214 Ky. 475, 283 S. W. 431, played no part in the consideration and determination of this case, it may prove interesting to the curious reader.

Judgment affirmed.