## Dowell v. Commonwealth.

(Decided November 8, 1929.)

F. M. JONES for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant was indicted on the charge of murdering Lafe Lanham, and on his trial was convicted of the offense of voluntary manslaughter, and sentenced to

serve 15 years in the penitentiary. From that judgment, he appeals.

He relies upon two grounds for reversal: First, he insists that the verdict is flagrantly against the evidence; and, secondly, he contends that incompetent evidence was admitted for the commonwealth. The facts are these:

On the 12th of October, 1927, Lanham and the appellant met on the "commissary porch at White Star." The appellant says that, as Lanham started to leave, he insisted that the appellant accompany him, and, on appellant stating that he did not wish to go, Lanham threatened him. So, as appellant testifies, to keep down trouble, he went with Lanham. Appellant further testifies that, as they went along the highway, Lanham asked him to wait while he went up to the house to get his pistol, and in accordance with that request he waited about a half hour down at a restaurant, while Lanham went and armed himself. On Lanham's return appellant says that he, under duress of Lanham's threats, accompanied Lanham to the home of Maud and Elijah Helton. Maud Helton is the sister of the appellant, and Elijah Helton is her husband. When Lanham and the appellant arrived at the Helton home, all agree that they went into the sitting room, and there Maud Helton played a roll on the player piano. While she was playing the roll, Lanham, as she and the appellant testify, got very boisterous and used some very indecent language. They both say Lanham was drunk. After Maud Helton finished playing the roll, her husband sat down at the piano and started a second roll. Lanham was still cursing, as appellant and Maud Helton testify, and, on appellant's requesting him to desist, Lanham said to the appellant, "God damn you, I'll kill you," and reached into his bosom as though going for a gun. A pistol belonging to Maud Helton was lying on the top of the piano. Appellant grabbed it and fired three times. The first ball went through the cap of Elijah Helton and knocked him from the piano stool, but did not wound him. The other two balls struck Lanham, and he sank to the ground. Appellant, who was "pretty drunk," as he admits, then made his way from the house and was later arrested.

Neighbors, on hearing the shots, rushed in, and all testify, including Maud Helton, that Lanham was unarmed. He was taken to a hospital, where the doctors say they could find no evidence of his having been drinking. He died on October 14th following, but before he did so he made a dying declaration, in which he said that

he was doing nothing at the time he was shot. Lanham's pistol was found in his store after his death, behind some cracker boxes, where he before his death told his wife it would be found. From this statement of the case, it is obvious that it was one for the jury, and that the verdict it found is not only not flagrantly against the evidence, but, on the contrary, rather merciful to the appellant, if the jury believed the commonwealth's evidence, as evidently it did, and as it had a right to do.

The second ground for reversal, however, will have to be sustained. Although appellant had issued a subpoena for Elijah Helton, he was not found, and it is intimated in the record that he is beyond the confines of the commonwealth. He was not present at appellant's trial. When Maud Helton was on the stand, she was asked on cross-examination if shortly after the shooting, and on the same day, she and her husband did not drive down to White Star, and there meet Charles Gurley and Charles Miller, and that Miller asked her and her husband in her presence how the shooting occurred, and Elijah Helton answered that he was sitting at the piano when appellant fired the pistol, that the first shot went through his cap, that there had been no trouble before the shooting, and that no words whatever had passed between appellant and Lanham before appellant shot Lanham. Over appellant's objection, Maud Helton was required to answer the question, when she said that she did not remember whether her husband had made any such statement or not. Later Gurley was introduced by the commonwealth, and testified that Helton had made the statement concerning which Maud Helton had been interrogated. The court then told the jury that it should not consider the testimony of Gurley as substantive evidence, but should receive it only for the purpose of contradicting or affecting the credibility of Maud Helton, if in its judgment it did so.

That evidence was not admissible, even for that purpose. It is very hard to understand on just what theory the commonwealth relied when it interrogated Maud Helton about these matters and introduced the evidence of Gurley. That is was a plain attempt to put the evidence of Elijah Helton before the jury in this hearsay fashion is too clear and apparent for argument. The Attorney General suggests that probably the theory of the commonwealth's attorney was that the evidence was admissible to demonstrate that Maud Helton was not an impartial witness, and he cites the case of Hayden v. Com-

monwealth, 140 Ky. 634, 131 S. W. 521, in support of his suggestion.

That very case is destructive of the theory. There Hayden was charged with the offense of grand larceny. He was jointly indicted with one Georgia Belle Smith, but asked for, and of course was granted, a separate trial. Georgia Belle Smith was first tried and convicted. On Hayden's trial, he was asked if he, in the presence of the police officers, did not hear Georgia Belle Smith state that she got into the house, threw the stolen articles out of the window to him upon the ground, and that he was there to grab them for her, and that, on her stating these things, he did not deny them. Hayden answered, "No, sir." Later the officers testified that Georgia Belle Smith had made those statements in the presence of Hayden and that he had not denied them. The court then gave the jury an admonition similar to the one given in this case. Hayden was convicted, and on appeal to this court the judgment was reversed, solely on the ground of the error in admitting this testimony about what the Smith woman had said.

What Elijah Helton said in the presence of Maud Helton could not affect the rights of the appellant, who was not present. Helton was not under oath, nor was any opportunity afforded appellant, on the occasion when it is said Helton made these statements, to deny them, much less to cross-examine Helton. Indeed, Gurley's evidence did not even contradict Maud Helton, for she did not deny that perhaps her husband had said the things attributed to him.

In the case of Ray v. Ray, 196 Ky. 579, 245 S. W. 287, Mrs. Ray sued Andrew E. Ray for damages arising out of a collision between Andrew Ray's automobile and Mrs. Ray's buggy in which she was driving. In the course of the trial, Andrew Ray offered to prove that Mrs. Ray's husband in her presence had told one Slaughter how the accident happened, and that Mrs. Ray had not denied the statements her husband made. This account, as shown by the avowal, exonerated Andrew Ray of any negligence. The court refused to permit Slaughter to testify what Mrs. Ray's husband thus told him, and the court's action in this regard was upheld by this court. If such evidence was not admissible, though made in the presence of the party to the litigation, it is hard to see how it is admissible against one who was not even present when it was made. See, also, Hall v. Commonwealth, 217 Ky. 518, 289 S. W. 1102.

Nor is it proper to show in the fashion attempted that Maud Helton was not an impartial witness. That she was not was only too apparent to any sensible man listening to her testimony, and there was scarce need for the commonwealth to inject this statement of her husband into the record to establish her partiality. Even if she had denied that her husband had made the statement, which she did not, if would have been confusing to the jury, even under an admonition of the court, to have separated the avowed purpose of the evidence to affect her credibility or impartiality from the evident purpose of the commonwealth to thus indirectly get in by hearsay the evidence of Elijah Helton. The court committed error when it allowed Maud Helton to be interrogated about these matters, and Gurley to testify as he did, and such error was not cured by the admonition he gave, for the evidence was not even admissible for the purposes indicated in the admonition.

For the reasons herein stated, the judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.