## Dowell v. Commonwealth.

(Decided January 20, 1931.)

F. M. JONES for appellant.

J. W. CAMMACK, Attorney General, and HOWARD SMITH GENTRY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is a second appeal of this case. Dowell v. Commonwealth, 231 Ky. 412, 21 S. W. (2d) 651, 652. On a return of the case to the circuit court a trial was had in conformity to the opinion of this court. The appellant

was again convicted and his punishment fixed at twenty-one years in the penitentiary. He appeals.

On this trial the evidence was substantially the same as set out in the former opinion of this court.

On the former appeal two questions were raised: (1) that the verdict was flagrantly against the evidence; (2) the admission of incompetent evidence. We reversed the case on the second ground. The incompetent evidence therein complained of is stated in the former opinion in this language:

> "When Maud Helton was on the stand, she was asked on cross-examination if shortly after the shooting and on the same day, she and her husband did not drive down to White Star, and there meet Charles Gurley and Charles Miller, and that Miller asked her and her husband in her presence how the shooting occurred, and Elijah Helton answered that he was sitting at the piano when appellant fired the pistol, that the first shot went through his cap, that there had been no trouble before the shooting, and that no words whatever had passed between appellant and Lanham before appellant shot Lanham. Over appellant's objection, Maud Helton was required to answer the question, when she said that she did not remember whether her husband had made any such statement or not. Later Gurley was introduced by the commonwealth, and testified that Helton had made the statement concerning which Maud Helton had been interrogated."

Elijah Helton, mentioned above, was introduced as a witness in behalf of defendant at the last trial. In chief, he testified that deceased was swearing and made certain statements to appellant, "and ran his hand in his shirt immediately before defendant shot." On cross-examination he was asked by the commonwealth if he, on the evening after the killing occurred and in the presence of Charles Gurley and others whose names were given and while near the tipple at White Star, did not state that, "He (the witness) was sitting on the piano stool and the 'first shot was fired hit me in the head,' and then and there took off your cap and showed a hole in the cap which had been shot by defendant and that not a word had been said between Lafe Lanham and Jim Dowell and there was no trouble between them before the shooting."

Over the objection of appellant, the court permitted the witness to answer. His answer was that he did not make the statement. Maud Helton was asked, by the commonwealth, if she were not present at the same time and place and that she made substantialluy the same statement in the presence of the same witnesses. She likewise denied making the statement. The commonwealth was permitted to call Charles Gurley and Ward Scott and to ask each of them if they were present and heard the witnesses Elijah Helton and Maud Helton make the statements embraced in the questions we have indicated. These witnesses testified they heard substantially those statements made by each of them. The court admonished the jury as to the purpose of the testimony of the witness in this regard.

The court properly permitted the commonwealth to ask these witnesses these questions, and it properly permitted them to answer. Civil Code of Practice, Secs. 597, 598; Crawford v. Commonwealth, 235 Ky. 368, 31 S. W. (2d) 618; Thomas v. Commonwealth, 195 Ky. 623, 243 S. W. 1; Yates v. Commonwealth, 204 Ky. 552, 265 S. W. 275; Banks v. Commonwealth, 190 Ky. 330, 227 S. W. 455; Wilson v. Commonwealth, 140 Ky. 36, 130 S. W. 793; Redden v. Commonwealth, 140 Ky. 94, 130 S. W. 817; Franklin v. Commonwealth, 105 Ky. 237, 48 S. W. 986, 20 Ky. Law Rep. 1137.

To properly dispose of the second ground of complaint of appellant, a statement of the evidence heard in his behalf is necessary. In substance, appellant testified that for some time before the killing he and deceased were at the home of Elijah and Maud Helton; "that deceased had liquor, a 'pint and quart jar,' about one-half full; that he sweetened up some of it and drank some and I drank some; they were playing the piano and he commenced talking the same smart talk and I asked him to hush it three or four times, and he said 'G—— D—— you, I will kill you,' and he started in his bosom after a pistol and I reached to the piano and got one and shot him; I was afraid he was aiming to kill me." The appellant was asked to state what occurred between Elijah Helton and Maud Helton and decedent. His response was: "He was talking some bad talk to my sister. I asked him more than one time to quit handling that talk; he was drunk." Elijah Helton testified that decedent "was drinking. He and Jim wanted a glass

to sweeten up some whiskey and I got them the glasses; they sweetened up some liquor and drank it and then had my wife to play the piano. He got up and began swearing and came up to me and slapped me on the shoulder and said by G——, I think you are jealous of me, I said, 'No, I have no right to be jealous of you, I like you,' and he said, 'You have no right,' you have a G—— D—— good woman,' and I said, 'I know it.' He said, 'You have the best G—— D—— woman in the world,' and repeated it five or six times, and Jim (appellant) was sitting on the davenport and got up and said, 'Hush Lafe,' and Lafe ran his hand into his shirt and I started to get up and one glanced me and knocked me down. There were three shots fired and he was lying on the floor.''

Maud Helton in her testimony, in substance states: ''They came on through and went into the kitchen and were drinking and asked me to play the piano for them. Lafe did and I went and put a record on the piano and Lafe came over and went to handling rough talk to me. Jim Dowell and my husband were in the kitchen; they came in and he was talking to my husband, telling him what a good looking woman I was and all that stuff, and my brother told him to hush. He said, 'Hush talking that rough talk,' and he said to Jim, 'I will kill you,' and ran his hand about half way under his shirt, and said, 'I will kill you,' and Jim got my gun and shot him. My pistol was lying on the piano.''

It is apparent from the testimony of appellant and the eyewitnesses that deceased was making no threats or demonstrations or offering any violence toward either Elijah Helton or Maud Helton. It is equally apparent that appellant does not claim that he shot and killed deceased in order to protect Elijah Helton or Maud Helton from any danger to them at the hand of deceased, real or apparent to them or to defendant. The instructions given by the court were in conformity to the evidence heard, and the court committed no error in the self-defense instruction by confining the right of self-defense to the appellant himself.

Wherefore, perceiving no error, the judgment is affirmed.