## Bishop v. Commonwealth.

(Decided October 16, 1931.)

E. J. PICKLESIMER for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE BRATCHER—Affirming.

The appellant, Gove Bishop, was indicted, tried and convicted in the Pike circuit court for the murder of Flem Varney, and his punishment fixed at eight years in the penitentiary. From that judgment he appeals, urging as grounds for reversal: First, error of the court in refusing to admit competent evidence; second, in refusing to grant appellant a continuance; and, third, in failing to instruct the jury on the whole law of the case.

The appellant, Gove Bishop, and the deceased man, Flem Varney, were neighbors, living in the same community in Pike county. They were both married men. The appellant was a coal miner. It does not appear what the occupation of the deceased man was at the time. There had been some neighborhood talk of improper relations between Flem Varney and the wife of Bishop. This information was brought to the appellant. He was informed that during the time when he was away from home at work Varney was a frequent visitor to his house. About the time he had received this information, he also observed that his wife had a diamond ring which he had not given her and which she did not have the money to purchase. He also observed that, when Varney passed the house, his wife watched him from the window until

he was out of sight. Varney, upon learning that he was being accused of illicit and improper relations with Mrs. Bishop, went to the home of Bishop, about 9 o'clock on the morning of the tragedy, and had a conversation with appellant about this matter. He insisted on Bishop's telling him the names of the parties who had given him the information. This Bishop refused to do. Upon Bishop's refusing to give him this information, Varney stated that he believed Jennings Slone and Tom Hunt were the parties. He made threats to Bishop against Slone and Hunt. He also told Bishop that the tales that had been told him about his wife were lies; that if he did not quit listening to such falsehoods he was going to shoot his brains out. After Varney left, Bishop drew his money from the bank, went to Williamson, W. Va., and purchased a pistol. This weapon was purchased under the assumed name of Horace Manns. He returned to his home about 12:30 and engaged in some practice shooting. A short time after his return home, Tom Hunt visited him. He told appellant that Varney had been to his house and accused him of telling Bishop of his relations with Mrs. Bishop. He said Varney told him that he was going to kill him and Jennings Slone. Upon the departure of Hunt, Bishop went to the home of Jennings Slone, he says for the purpose of informing Slone of the threat that Varney had made against him. According to the evidence of the appellant, when he reached the home of Slone and while talking to Slone in front of his house, Varney came up. He came within speaking distance of the two, passed some words with Jennings Slone, in a somewhat friendly fashion, and then told Slone that he wanted to talk to him. It appears from appellant's testimony that they were at all times within his hearing. Varney began to curse and abuse Jennings Slone and accuse him of telling Bishop tales upon himself and Mrs. Bishop. At this juncture, Bishop says he informed Varney that Slone had told him nothing of the kind, that Varney retorted, "Maybe, by God, you want to take it up," and that there was some heated conversation between them. He states that Varney reached for and obtained his pistol, and, as he started to shoot, appellant quickly drew his pistol, fired from his hip, and killed Varney. It appears that Varney lived in sight of Jennings Slone's and in sight of the place where Bishop and Slone were talking. Myrtle Varney, the daughter of the deceased, testified that she was looking out of the window

of her home and saw her father and Jennings Slone meet in the road. She was not near enough to hear the conversation. While they were talking, she states, the appellant came down the road and stood at the edge of Slone's coalhouse; that her father started home, and, as he stepped over the railroad track, Bishop shot him; that her father turned around, and Bishop fired three or four more shots and her father fell. One of the shots hit Varney just behind the ear on the left side and came out just above the right eye.

The appellant's first complaint is that the court refused to admit the following evidence offered by the defendant:

"Q. Why did you go to Jennings Slone's? A. Well, I went up there and called him down there and asked him what did Flem say to him. (Plaintiff objects.)

"Q. What did you go for? A. I went to warn him to keep out of his way until the thing kindly quieted down, that he might hurt him or do him some injury."

It is argued that this evidence was very material as showing the appellant's motive in going to the place where the killing took place. The record fails to disclose on just what theory the court sustained the objections to this evidence. An examination of the proof just preceding these questions and immediately following gives proper setting to this evidence. In the question immediately preceding the complained of questions and answers, the appellant had been permitted to go into details of a conversation between himself and Tom Hunt concerning threats made by Varney concerning Hunt and Slone. He said he told Hunt he believed he would go up and tell Jennings Slone that Varney might do something to him; that he got right up and went up there and called Jennings out, and about the time Jennings got to where he was that Flem came up. Then he attempted to go into the conversation between him and Jennings Slone, and the commonwealth objected. The court sustained the objection, saying that, unless there was a threat, the court would sustain the objection. Then the two questions and answers followed, and after these two questions were answered the court sustained the objections to them. In the questions immediately following that he was allowed to go on and detail the conversa-

tion that occurred between himself and Varney and the conversation between Varney and Jennings Slone. In the main, the evidence fully discloses the purpose sought to be brought out in the questions and answers to which objections were sustained. We do not see that these questions and answers were material when the whole evidence is read. The answers to these questions bring no information to the jury that is not fully disclosed by the general trend of the evidence offered by the appellant himself. The exclusion of this evidence was not prejudicial to the substantial rights of the appellant.

The second ground, that the court erred in refusing to sustain the appellant's motion for a continuance, is based upon the absence of Mrs. Tilda Slone. In support of his motion for a continuance, the appellant filed his affidavit and set out the names of a number of witnesses, but upon the call of the case all these witnesses were present and testified except Mrs. Tilda Slone. The affidavit shows that Mrs. Slone was unable to attend because of childbirth immediately expected. The motion for continuance was overruled, and the appellant was allowed to read the affidavit as her testimony. Section 189, Criminal Code of Practice. In this case, the defendant introduced sixteen witnesses, all his witnesses except Mrs. Slone, and read the affidavit as her evidence. See King v. Commonwealth, 3 S. W. 430, 8 Ky. Law Rep. 778. The affidavit states that Mrs. Slone was an eyewitness to the killing, and goes into details and states what she would swear if present. There is but little difference in the evidence of Mrs. Slone as set out in the affidavit and the evidence of the appellant, Gove Bishop, and Jennings Slone. All of the details to which Mrs. Slone would have given testimony were fully explained by these two witnesses. That fact, coupled with the affidavit being read as her deposition, fully complied with the provisions of the Code. Mise v. Commonwealth, 80 S. W. 457, 25 Ky. Law Rep. 2207; Bates v. Commonwealth, 210 Ky. 421, 276 S. W. 119. The trial court has a broad discretion in determining when continuances should be granted. Rivers v. Commonwealth, 212 Ky. 329, 279 S. W. 328: Yates v. Commonwealth, 215 Ky. 725, 286 S. W. 1046. This court will not reverse a case for failure to sustain a motion for a continuance unless it shall affirmatively appear that the overruling of such motion abused a sound discretion. Pierce v. Commonwealth, 214 Ky. 457, 283 S. W. 418. In the above case, it was held that the overruling of a motion

for continuance at the term of court in which the indictment was returned was not error where the affidavit was read as the deposition of the absent witness. We do not find, upon a full examination of this ground, that this court abused its discretion in overruling appellant's motion for a continuance. Phelps v. Commonwealth, 209 Ky. 318, 272 S. W. 743; Mannin v. Commonwealth, 212 Ky. 529, 279 S. W. 945.

The court gave the regular instruction upon murder, manslaughter, and self-defense. The appellant insists that the self-defense instruction should have included the right of the appellant to shoot in defense of Jennings Slone. The instruction did not go to that extent, but was the regular self-defense instruction, telling the jury that, if the defendant believed at the time he shot, and had reasonable grounds to believe, that he was then and there in danger of death or great bodily harm at the hands of defendant, and that it was necessary, etc., that he then had a right to shoot defendant as a matter of self-defense. There is no evidence here that at the time the appellant shot Varney he was making any effort to do bodily harm to Jennings Slone. The appellant does not testify that at the time he shot Varney that Jennings Slone was in danger or believed by him to be in danger of any great bodily harm at the hands of Varney. But, at the time he injected himself into the conversation between Varney and Jennings Slone, according to his evidence, Varney turned and threatened to shoot him and was in the attempt at the time he was shot. The whole evidence tended to establish a case of self-defense on the part of Bishop, and nowhere, directly or by inference, establishes that, at the time the shots were fired, they were fired in the defense of Jennings Slone. He claims that he himself was in danger and fired to protect himself.

The instruction must be based upon the evidence, as there is no evidence that Slone was in danger nor that Bishop thought he was in danger. The above instruction was the only one that should have been given under the circumstances. Davis v. Commonwealth, 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551; Young v. Commonwealth, 214 Ky. 475, 283 S. W. 431; Johnson v. Commonwealth, 215 Ky. 717, 286 S. W. 1053; Newberry v. Commonwealth, 222 Ky. 630, 1 S. W. (2d) 1045; Kindrick v. Commonwealth, 226 Ky. 144, 10 S. W. (2d) 639; Castle v. Commonwealth, 228 Ky. 151, 14 S. W. (2d) 387; Hopkins v. Commonwealth, 234 Ky. 676, 28 S. W. (2d) 971; Dowell

v. Commonwealth, 237 Ky. 56, 34 S. W. (2d) 946; Turner v. Commonwealth, 240 Ky. 536, 42 S. W. (2d) 1088, this day decided.

We have examined carefully all the grounds urged by the appellant for a reversal of this judgment. While the evidence as to self-defense is somewhat conflicting, there was ample evidence to support the findings of the jury. Bishop had been hearing stories of the conduct of his wife and Varney. He was jealous. He watched each act and movement of his wife. There is but little doubt of the truth of the accusations made as to the conduct of Varney and Mrs. Bishop as shown by this evidence. Bishop, infuriated by these stories, purchased a pistol under an assumed name, practiced shooting at a target, and, when he believed that he had obtained a sufficient amount of practice, he armed himself, went in quest of his enemy, spurred and nerved by all the jealousy that these tales had engendered in his soul, and, when he beheld the object of his hatred, there is some evidence that he immediately fired into the back of his enemy's head. This is the testimony of Varney's little daughter, an eyewitness. There is evidence of a bullet wound in the back of his head to corroborate her evidence.

The jury heard all the evidence, saw all the witnesses, believed this appellant to be guilty, fixed his punishment at eight years in the penitentiary, and we find in the whole record no errors committed against the substantial rights of the appellant, and are of the opinion that upon the whole case he had a fair and impartial trial, and the judgment of the lower court must of a necessity be affirmed.